LEBANON BANK & TRUST CO v. GRANDSTAFF et al.—141 S. W. (2d) 924.

Middle Section.   January 27, 1940.

Certiorari Denied by Supreme Court, April 6, 1940.

Rehearing Denied by Supreme Court, June 29, 1940.

Jesse Cantrell and C. C. Davis, both of Watertown, for appellants.

L. H. Walker and A. A. Adams, Sr., both of Lebanon, for Lebanon Bank & Trust Co.

Harry Phillips and Robt. L. Forrester, both of Watertown, and E. R. Woolard, of Lebanon, for Fred Cox and Robert L. Forrester.

FELTS, J. This is a controversy over a deposit in the Watertown Branch of the Lebanon Bank & Trust Company.

T. R. Patton by a deed of trust had conveyed a tract of land to T. A. Young, trustee, to secure certain indebtedness. On January 25, 1935, T. A. Young, trustee, made a foreclosure sale of the land. Fred Cox became the purchaser at the price of $1,225. On January 29, 1935, he gave the trustee his check for $1,225, drawn on the Watertown office of the Lebanon Bank & Trust Company. This check was payable to ''T. A. Young, Trustee,'' and it recited it was ''In full payment of land purchased under foreclosure of deed of trust 1/25/1935 of T. R. Patton land as per trust deed recorded in Trust Book 65 page 514 R. O. W. C. Tenn. to be disbursed as per deed of trust.''

On the same day, January 29, 1935, T. A. Young took this check to the bank on which it was drawn, indorsed it, received from the bank $61.25 in cash, his trustee's fee, deposited the balance, $1,163.65, to the account to ''T. A. Young, Trustee;'' issued two checks on this account, one for $405.30 to W. D. Grandstaff and one for $753.65 to Fred Cox, as the amounts to which they were respectively entitled as the holders of the indebtedness secured by the deed of trust. Cox deposited the $753.65 check to his account and Grandstaff deposited the $405.30 check to his account in the same bank; and each of them received from the bank a deposit slip in the form customarily issued by the bank, showing the date and amount of the deposit and the conditions upon which it was received by the bank. Among other things, the deposit slip stipulated that ''in receiving items for deposit or collection this bank acts only as depositors' collecting agent;'' that ''all items are credited subject to final payment in cash or solvent credits;'' and that the bank ''may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at the close of business on day deposited.''

These transactions all occurred on the morning of January 29, shortly after the bank opened. On the same day about noon Robert L. Forrester wrote and delivered a letter to the bank, in which he stated that he was entitled to an attorney's fees of $406.50 out of the proceeds of the foreclosure sale, represented by the $1,225 check given by Cox to the trustee; that such proceeds, as shown by the check, were a trust fund which it was the trustee's duty to disburse according to the terms of the deed of trust; that one of such terms was: "To pay all costs and charges of executing this trust, including attorney's fees and expenses of any litigation which may arise on account of the execution and enforcement of this trust;" that under this provision and by agreement of the parties his attorney's fee was payable out of the fund; that the trustee had refused to pay it; and that the bank should guard the fund accordingly.

Thereupon, before the close of business that day, the bank returned to Cox and to Grandstaff the trustee's checks they had deposited, advised them of Forrester's written demand upon it against the trust fund, and stated it could not safely pay these checks until the matter should be adjusted.

However, later that day, Cox and Forrester met at the bank and Forrester withdrew his objection against the payment of the check the trustee had given Cox; and that item is not now involved. Also the trustee paid $4.80 for circulars to advertise the sale and for revenue stamps on his deed; and this item is likewise not in dispute.

A few days later Grandstaff undertook to withdraw the $405.30 by check, which the bank refused to pay. Thereafter, on April 27, 1935, he sued the bank for $475.04 (the $405.30 plus $69.74 standing to his credit in the bank). This suit was before a justice of the peace, and was set for trial April 30, 1935. On that day the bank filed the present bill, setting out the matters above stated, averring that it had $405.30 on deposit to the account of T. A. Young, trustee, and praying that the trustee, Grandstaff, and Forrester be required to interplead and litigate among themselves the right to this fund, that it be allowed to pay the fund into court and be discharged with its costs, and that the suit before the justice be enjoined. Accordingly a temporary injunction issued.

T. A. Young, trustee, answered, admitting the bill of interpleader was properly filed and should be sustained, and bringing in Fred Cox by crossbill in order that the rights of all the parties should be determined and the trustee exonerated. Cox disclaimed any interest in the fund on deposit. Robert L. Forrester filed an answer and crossbill, alleging that the amount secured by the deed of trust was the expenses of executing the trust, including attorney's fees, a note totaling $4,065 held by Fred Cox and a note totaling $2,186.07 held by W. D. Grandstaff; that he was employed to collect the Fred Cox note, with the understanding and agreement that the fee pro-

vided in the note, $406.50, would be paid to him out of the proceeds of the sale; that Cox, Grandstaff and the trustee all understood and agreed to this; but that after the sale the trustee refused to pay the fee and undertook to dispose of the fund so as to deprive him of the fee agreed on by the parties and provided for in the note and deed of trust; that he was entitled to recover this amount of the trustee and to have the recovery declared a lien on the fund of $405.30 on deposit to the trustee's account in the bank. And he prayed this relief. W. D. Grandstaff filed an answer and crossbill, denying that there had been any agreement to pay an attorney's fee, charging that the Cox note had been transferred to Cox by Forrester to enable the latter to claim such fee, and alleging that the bank had accepted and paid the $405.30 check given by the trustee to Grandstaff by placing the amount thereof to his credit; and that thereafter the bank had no right or authority to charge back the amount of said check to his account and credit it to the trustee's account, as it had undertaken to do. He prayed for a decree against the bank for $475.04, interest and costs.

On December 5, 1935, Chancellor Stout sustained the bill as a bill of interpleader and ordered that defendants interplead and settle the controversy among themselves, and that complainant bank pay the fund into court and be discharged with its costs, such costs to be paid out of the fund.

On May 29, 1936, there was a reference to the master, and thereafter more than 900 pages of depositions were taken and filed. On June 9, 1938, Chancellor Marable overruled the exceptions to the master's report, confirmed the report, and in addition filed written findings of fact, and decreed that the bank pay to the master the fund "tendered by it under the bill of interpleader, heretofore sustained as such," and be discharged; that T. A. Young's crossbill be dismissed at his costs; that Robert L. Forrester's crossbill be sustained and he be allowed $142.16, this being the proportionate part of his attorney's fee chargeable against the fund here involved; that W. D. Grandstaff's crossbill be dismissed and he and his surety, Frances Pitts, pay all the costs not already otherwise adjudged; and that the master from the fund pay $142.16 to Robert L. Forrester, $50 to A. A. Adams, Sr., and L. H. Walker, solicitors filing the bill of interpleader, all of the costs not otherwise adjudged, and the balance, if any, to W. D. Grandstaff.

T. A. Young, individually and as trustee, and W. D. Grandstaff appealed, but Young has not assigned error. Grandstaff has assigned nine errors, each of which presents some phase of his contention that the fund of $405.30 should have been decreed to him. None of them makes any question as to his balance of $69.74 in the bank or complains of the decree for not allowing him a recovery for

this item. Upon the assignments of error the sole controversy is over this fund of $405.30.

Grandstaff's first insistence is that the bank could not maintain a bill of interpleader because it was not in the position of a stakeholder, but had incurred an independent or special liability to him. Gibson's Suits in Chancery (3 Ed.), sec. 1110; 4 Pomeroy's Eq. Jur., secs. 1322-1326; Bank of Whitehouse v. Baldridge, 134 Tenn., 7, 183 S. W., 158; Newsum v. Interstate Realty Co., 152 Tenn., 302, 278 S. W., 56. The bank urges, as a preliminary objection, that the decree of December 5, 1935, sustaining the bill as a bill of interpleader, was a final decree and was not appealed from; that it settled the bank's right to maintain the bill of interpleader; and that the present appeal did not bring up this question and it is not now open to review. Allen v. Shanks, 90 Tenn., 359, 377, 16 S. W., 715; Citizens' Bank & Trust Co. v. Bayles, 153 Tenn., 40, 281 S. W., 932; 5 C. J. S., Appeal and Error, secs. 1491, 1492.

██ The usual decree of interpleader is that the bill is properly filed, that complainant pay the fund into court and be dismissed with his costs, and that defendants interplead and settle the controversy between themselves. State Ins. Co. v. Gennett, 2 Tenn. Ch., Cooper, 100; Gibson's Suits in Chancery (3 Ed.), sec. 1113; 4 Pomeroy's Eq. Jur., sec. 320; 15 R. C. L., p. 232; 33 C. J., 464-465. Such a dismissal of complainant ends the litigation between him and the defendants and he is neither interested in, nor a party to, the litigation that follows between defendants. These litigations are properly regarded as two separate and distinct suits, the first suit being between the complainant and the defendants as to whether there shall be a decree of interpleader, and the second being between the defendants as to who shall get the fund or thing in dispute. John Weis, Inc., v. Reed et al., 22 Tenn. App., 90, 118 S. W. (2d), 677; Lafayette-South Side Bank & Trust Co. v. Siefert, 223 Mo. App., 431, 18 S. W. (2d), 572. The usual decree of interpleader determines all matters involved in the first suit and wholly ends it as to all the parties; and such a decree has been held final and appealable as of right. Lafayette-South Side Bank & Trust Co. v. Siefert, supra; see Bozeman v. Naff, 155 Tenn. 121, 290 S. W., 981; Winters v. American Trust Co., 158 Tenn., 479, 486, 14 S. W. (2d), 740; compare Gavin v. Shelby County et al., 172 Tenn., 696, 113 S. W. (2d), 1195; Bruce v. Anz, 173 Tenn., 50, 114 S. W. (2d), 789. However when a decree of interpleader does not dispose of all the matters involved in the suit between complainant and defendants, and does not wholly end that suit, it is interlocutory and not final. Memphis Cold Storage Warehouse Co. v. Woodson, 1 Tenn. App., 340.

██ We do not think the decree of December 5, 1935, can be regarded as a final decree. True it sustained the bill as a bill of interpleader, and ordered that defendants interplead and settle the

controversy among themselves, and that the bank pay the fund of $405.30 into court and be discharged with its cost. However, none of the parties seemed to regard this decree as final or as settling all the matters in litigation between the complainant bank and the defendants; but the litigation continued upon the theory that the bank was still a party to it and participating in it. This was doubtless because the decree had not expressly disposed of the issues made by Grandstaff's crossbill against the bank and the bank's answer thereto. After this decree the proof was taken, and much of it was directed to these issues; and in the decree of June 9, 1938, the one appealed from, the Chancellor determined these issues, and decreed that the bank pay to the master the fund "tendered by it under the bill of interpleader, heretofore sustained as such," and be discharged; that a fee to the bank's solicitors and the costs to be paid out of the fund; and that Grandstaff's crossbill be dismissed. Since the cause was tried below upon the theory that the decree of December 5, 1935, had not disposed of all the issues between the bank and Grandstaff and was, therefore, not a final decree, we think that theory cannot be departed from on this appeal, and we must likewise regard the decree as not final but interlocutory. Mayberry v. Redman, 169 Tenn., 190, 83 S. W. (2d), 897; First Nat. Bank of Sparta v. Hunter, 22 Tenn. App., 626, 125 S. W. (2d), 183, and authorities there cited. Regarded as interlocutory, the decree was not appealable, since it was not one the sorts of interlocutory decrees from which a discretionary appeal may be allowed. Code, sec. 9038; Fidelity Mut. Life Ins. Co. v. Mann et al., 171 Tenn., 137, 101 S. W. (2d), 131. And it could only be reviewed on appeal from the subsequent final decree. 5 C. J. S., Appeal and Error, sec. 1492.

We think the bill of interpleader was properly sustained. It is true a bank which accepts a deposit cannot ordinarily deny the depositor's title or require him to interplead with a stranger for the deposit. But where, as in the present case, the deposit is made by a custodian or trustee of money in which other persons have the beneficial ownership, and the bank has notice of conflicting claims by such persons to the money, it may maintain a bill of interpleader to require them to settle such claims among themselves. Bank v. McClure, 104 Tenn., 607, 58 S. W., 240; 5 Michie on Banks and Banking, 694, 695; Annotation, 60 A. L. R., 719. T. A. Young, trustee, made the deposit to his account as trustee. The proceeds of the check he deposited were shown on the face of the check to be a trust fund which was to be disbursed according to the terms of the deed of trust. Robert L. Forrester notified the bank in writing of his claim against this fund, stating that under the provisions of the deed of trust and by agreement of the parties he was entitled to be paid an attorney's fee out of the fund. The bank also knew that the trustee, by giving Cox and Grandstaff checks for the whole

amount of the fund, was undertaking to disburse the fund contrary to this agreement and the terms of the deed of trust and so as to prevent payment of the fee out of the fund. If the bank, with this knowledge, had paid these checks and thus participated in such a diversion of the trust fund, it would have run the risk of rendering itself liable to Mr. Forrester as for conversion. United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn., 720, 157 S. W., 414; Barry v. Hensley et al., 170 Tenn., 598, 98 S. W. (2d) 102; cf. New York L. Ins. Co. v. Bank of Commerce & Trust Co., 172 Tenn., 226, 111 S. W. (2d), 371, 115 A. L. R., 643. So, to protect itself, it charged back to the accounts of Cox and Grandstaff the trustee's checks they had deposited and credited the trustee's account therewith, and returned the checks to Cox and Grandstaff, and advised them it could not pay the checks until the controversy should be settled. Clearly it had the right to do this, unless it had precluded itself from so doing by having received these checks as deposits to the accounts of Cox and Grandstaff.

Grandstaff insists that when the bank accepted his deposit of the check and credited it to his account, this was a payment to him of the check, in legal effect the same as if the bank had handed him the money and he had handed it back for deposit; and that the relation of debtor and creditor thereupon arose between the bank and him, and the bank could not later charge back the check to him. It is true that, when a bank accepts a deposit of a check drawn on itself and places it to the depositor's credit, this, in absence of an agreement to the contrary, constitutes payment of the check and the bank may not charge it back against the depositor's account. But when such a check is offered for deposit the bank has the option to reject it or to accept it upon such conditions as may be agreed on between the bank and the depositor. 5 Michie on Banks and Banking, sec. 26, p. 49 et seq.; 9 C. J. S., Banks and Banking, sec. 281, pp. 587, 588, also sec. 284, pp. 590, 591. In this case the bank accepted Grandstaff's deposit of the check upon the conditions set out in the deposit slip issued to him, and such conditions were binding on him. Hardee v. George H. Price Co., 67 App. D. C., 25, 89 F. (2d), 497; Adams County v. Meadows Valley Bank, 47 Idaho, 646, 277 P., 575; E. S. Macomber & Co. v. Commercial Bank, 166 S. C., 236, 164 S. E., 596; 9 C. J. S., Banks and Banking, sec. 284, pp. 590, 591. One of these conditions was that the bank acted only as his collecting agent, and another was that it might charge the check back to him if it was not good at the close of business on the day deposited. It was not good if Mr. Forrester's claim to the fund on which it was drawn was valid and the bank by paying the check stood to lose the amount of it; and the bank had the right to charge it back, and to bring in the rival claimants by bill of interpleader to have determined who was entitled to the fund.

██ ██ Grandstaff insists that the Chancellor should not have allowed a fee to solicitors for the bill of interpleader. Where such a bill is properly filed it is within the Chancellor's discretion to allow a fee out of the fund to solicitors for the bill. Inter-Southern Life Ins. Co. v. McDaniel, 159 Tenn., 478, 19 S. W. (2d), 269; Woodward v. Metropolitan Life Ins. Co., 160 Tenn., 325, 24 S. W. (2d), 888. Under the facts here appearing we think the allowance was proper.

██ ██ It is also insisted that the Chancellor erred in decreeing that Mr. Forrester was entitled to $142.16 of the fund. On the reference the master found that Mr. Forrester rendered legal services to the trustee, investigating the title to the land, working out the question of homestead and dower rights of the widow, ascertaining the delinquent taxes on the land, and doing other matters necessary in the foreclosure sale; that the trustee accepted such services and before the sale he and the beneficiaries in the deed of trust agreed that Mr. Forrester should be paid a fee of $406.50 out of the proceeds of the sale; but that, having permitted Fred Cox to withdraw $753.65 of such proceeds, Mr. Forrester could look to the remaining part of the proceeds, the $405.30, for only the proportionate part of his fee which was chargeable against that part of the fund; that such proportionate part was $142.16; and that Mr. Forrester was entitled to be paid that amount out of the $405.30 here in controversy. The Chancellor overruled the exceptions to the master's report and confirmed the report, and decreed that Mr. Forrester should be paid $142.16 of the fund. There is material evidence to support this concurrent finding of the master and the Chancellor, and we are bound by it. Code, sec. 10620.

All of the assignments of error are overruled and the decree of the Chancellor is affirmed. The cost of this appeal will be taxed against T. A. Young and Mrs. Frances G. Pitts, administratrix of W. D. Grandstaff and surety on his appeal bond, it appearing that pending this appeal W. D. Grandstaff died, and the cause has been revived in the name of his administratrix. The cause will be remanded for distribution of the fund in the bank or in the hands of the clerk and master, and for such further proceedings incident thereto as may be necessary and proper, not inconsistent with this opinion.

Faw, P. J., and Crownover, J., concur.