# ALLEN v. ELLIOTT REYNOLDS MOTOR CO. et al.—
## 230 S. W. (2d) 418.

Middle Section.　February 24, 1950.

Petition for Certiorari denied by Supreme Court, June 7, 1950.

180

182

G. C. Allen and T. B. Finley, both of Lebanon, for complainant.

E. D. Jackson, of Nashville, for defendants.

FELTS, J. Complainant brought this suit for breach of contract to recover for losses and expenses of part performance. He averred in his bill that defendants, the local distributor of Hudson motor cars, offered to give him a contract as the exclusive Hudson dealer in Wilson County if he would provide a suitable sales room, garage, and equipment; and that he accepted this offer and proceeded to perform his part of the contract.

He further alleged that he removed his tenants from his apartment house, converted it to a suitable sales room and garage by expensive alterations and spent approximately $595 for tools and equipment; that defendants then notified him they would not give him the contract as dealer; and that his losses in rentals and expenses for the alterations and tools and equipment amounted to $2,500, for which he sued.

Answer was filed and proof taken by depositions. The Chancellor heard the cause and entered a decree adjudging defendants liable and referring it to the Master to find the amount of complainant's damages. At the next term the Master filed his report. He found the amount to be $495 for loss on the tools and equipment and $1,454.96 for expenses of the alterations, or a total of $1,949.96. The Chancellor overruled defendants' exceptions to the report, confirmed it, and entered a decree for complainant for $1,949.96 and costs.

Defendants brought the case here by broad appeal, and have assigned both decrees for error upon numerous grounds, which may be summarized in these main propositions: (1) that there was no legally valid or binding contract between the parties; (2) that, assuming there was a contract, it depended on certain conditions which failed and made performance impossible; and (3) that complainant was not entitled to recover any damages.

Complainant's reply is that we cannot review these matters. He insists that all of them were settled by the first decree except the amount of damages and that was settled by the concurrence of the Master and the Chancellor; that the first decree was not excepted to, became final at the end of the term, and could not thereafter be reopened by defendants' exceptions; and that the matters settled by it are not now open for review here. For this, he relies on Battle v. National Life & Acc. Ins. Co., 178 Tenn. 283, 157 S. W. (2d) 817.

This argument overlooks the effect of defendants' appeal. The Battle case dealt not with the power of appellate review but with the power of a trial judge or chancellor over his own interlocutory decrees. It held that he had no power at a subsequent term to revise an interlocutory decree which adjudges a right or determines

an issue. Such is the familiar rule. Watts v. Roberts, 185 Tenn. 313, 317, 206 S. W. (2d) 307, 309, and cases there cited.

 It is true the first decree was an interlocutory one which adjudged the issue of liability and which was not open to revision by the Chancellor at a subsequent term. But this does not mean that it is not open to review on appeal. Since it was an interlocutory and not a final decree, defendants had no right to appeal from it. Nor was it necessary for them to except to it at the time it was entered. The effect of their broad appeal was to bring up the whole case for trial here de novo upon a re-examination of the whole matter of law and fact appearing in the record. Code, Section 9036.

 This broad appeal vacated all of the decrees of the Chancellor and brought up for review de novo the whole clause, including the first decree as well as the final one; and either party could assign error upon any matter appearing in the record and all such matters are now open for review here. Vaccaro v. Cicalla, 89 Tenn. 63, 77, 14 S. W. 43; Allen v. Shanks, 90 Tenn. 359, 378, 16 S. W. 715; McCormick v. Phillips, 140 Tenn. 268, 271, 204 S. W. 636, L. R. A. 1918F, 791; Lebanon Bank & Trust Co. v. Grandstaff, 24 Tenn. App. 162, 167-168, 141 S. W. (2d) 924, 928; Third National Bank v. Carver, Tenn. App., 218 S. W. (2d) 66, 68.

We think the evidence proved that the parties made a contract by which defendants promised to give complainant a contract as the exclusive Hudson dealer in Wilson County. As to this the facts proved were these.

Defendants were a partnership located in Nashville. Under a contract they had with the Hudson Motor Car Company, they were its wholesale distributor for some

fifty counties in Middle Tennessee and Kentucky. Hudson furnished them a standard form for the contract which they were to make with their dealers in this territory. After the war when Hudson resumed the manufacture of cars defendants began to make contracts with their dealers in this area.

In the latter part of 1945 they began negotiations with complainant, who was a lawyer living in Lebanon, the county seat and principal town of Wilson County. Their employee S. T. Stapp had a number of conversations with complainant and outlined to him the requirements he would have to meet for them to give him a contract as the exclusive dealer in his county. Among other things, he would have to provide a suitable building for a sales room and garage and suitable equipment for the sale and service of Hudson cars.

He was unable to find such a building there for rent. He owned a building which was being used as a Negro apartment house. He showed this building to Stapp and they agreed that with the necessary alterations it could be converted to a suitable sales room and garage. In these conversations they agreed upon a number of other details, including a trade-name to be used by complainant, which was the Cumberland Valley Motor Company. In the latter part of December defendants wrote complainant a letter in which they confirmed the prior conversations and set forth the things he would have to do to qualify himself as the Hudson dealer in his county.

This letter was as follows:

"Dear Sir:

"This will confirm our conversation of 12-21-45 in which it was mutually agreed that, for the good of all concerned, you will satisfactorily comply with the fol-

lowing requirements which, in turn, would qualify you as a Hudson Master Dealer for the post-war period:

1. Satisfactory building, used car lot, etc.
2. Satisfactory sales, service and parts equipment.
3. Satisfactory identification signs.
4. Satisfactory parts stock.
5. Satisfactory finances.
6. Satisfactory service operation.
7. Mutual agreement on exclusive representation in the Hudson Dealership.

"It is agreed that within the next sixty (60) days you will make all arrangements to satisfactorily comply with the above-mentioned requirements, so far as existing conditions will permit, to qualify you as a Hudson Master Dealer.

> "Very truly yours,
> Elliott-Reynolds Motor Company
> S. T. Stapp, Wholesale Manager

"Accepted and agreed to:

/s/ Cumberland Valley Motor Co.

/s/ Grayson C. Allen"

As this shows, complainant accepted this agreement and began to comply with his part of it. He removed his tenants from his building and commenced the work of making the alterations to convert it to a sales room and garage. Most of this work had been completed by the latter part of January, 1946. Complainant had also bought part of the tools and equipment needed, and was going forward in the performance of the other requirements to qualify him as a Hudson dealer.

At that time defendants were notified by Hudson to stop signing up new dealers because its production of

automobiles was being seriously curtailed by strikes and shortage of steel and other materials. Accordingly defendants wrote complainant a letter on January 29 as follows:

"Dear Mr. Allen:

"Possibly you are wondering why you have received no further word from us, but we were very surprised to receive orders from the Hudson factory to stop signing new dealers immediately due to critical shortage of steel and other commodities that make up the essential parts of building an automobile. It is a condition entirely beyond our control and we are only in hopes that the steel industries strike will be over shortly and this order will be revoked. However, we can readily see that our present dealer organization will absorb all the automobiles that we can anticipate in the near future.

"Thanking you very kindly for your interest in Hudson, I remain,

"Yours very truly,

/s/ S. T. Stapp

S. T. Stapp

Wholesale Representative"

Thus defendants in effect said they hoped this condition was only temporary and this order would soon be revoked, but they could see that they already had enough dealers for all the cars they could expect in the near future. Complainant understood this as a declaration by defendants of their intention not to perform and as a repudiation of the contract. We think it was, and the parties both so understood it. While there was some further communication between them nothing came of it. Complainant adhered to his position that defend-

ants had breached the contract by repudiation. This suit followed.

Defendants insist that the negotiations between the parties fell short of a valid and binding contract; that this December letter or memorandum of the agreement was too indefinite to be an enforceable obligation, because it did not specify the time when, or the place where, the dealership would be created, and did not state the terms to be embodied in the dealer contract.

■ We think the negotiations resulted in a valid contract between the parties. Their agreement was not one to make a future contract of unascertained terms. It was that when complainant met the qualifications defendants would give him the dealership contract the terms of which were already ascertained and embodied in the standard form.

■ This memorandum did not undertake to embody all the details of the agreement of the parties. It merely set forth the requirements exacted of complainant to qualify him as dealer. Of course it must be read in the light of the previous negotiations and conversations of the parties and given the same construction which both of them gave it. It seems quite clear that both of them understood that defendants had made a definite promise to give complainant the dealership as soon as he met their requirements, or at least within a reasonable time thereafter.

Defendants urge another objection against the validity of the contract. They say that it was invalid for lack of mutuality, that complainant made no counterpromise, was not bound to accept the contract as dealer, and was not obligated to buy or sell Hudson cars.

■ We think the contract was not lacking in mutuality. Defendants offered to give complainant the contract as dealer if he would meet their requirements. He accepted this offer and proceeded with compliance on his part. We think this acceptance completed a bilateral contract between the parties, or at least his part performance made the contract a valid and binding one. Farabee-Treadwell Co. v. Bank & Trust Co., 135 Tenn. 208, 186 S. W. 92, L. R. A. 1916F, 501; Lazarov v. Nunnally, Tenn. Sup., 217 S. W. (2d) 11; Hutchinson v. Dobson-Bainbridge Realty Co., Tenn. App., 217 S. W. (2d) 6.

Defendants, however, insist that even if there was a contract it depended on conditions which made performance impossible and excused them. One of such conditions, it is said, was that they had to obtain Hudson's approval before they could make the dealership contract with complainant. Another condition was that Hudson would be able to make and supply the cars through the distributor to the dealer in order that he might be able to sell them. It is said that because of the strikes and shortages of materials Hudson was neither able to make the cars nor did it give its approval to the making of any contract with complainant as dealer.

■ Defendants' promise was to give complainant the dealership contract. Performance of this promise was still possible despite the scarcity of cars. If they had performed this promise, it is true the dealership might have proved unprofitable if the scarcity of cars, which then seemed only temporary, had long continued. But this was a business risk assumed by defendants equally with complainant.

■ It does appear that Hudson's contract with defendants as its distributor provided that it should first

approve their contracts with their dealers. But it does not appear that complainant was informed of this provision. Stapp said he was, he said he was not, and the Chancellor found that he was not. We think this finding is supported by the evidence, both testimonial and circumstantial.

It seems very improbable that complainant would have proceeded to remove his tenants and make expensive alterations of his building if he had understood that defendant's promise to make him a dealer was conditioned upon Hudson's approval, and that his preparations might be wasted for lack of such approval. Nor does it seem reasonable that defendants would have called on him for such outlays unless they assumed they could obtain Hudson's approval upon his meeting their qualifications of a dealer. We think the proof shows that defendants assumed this risk. This is shown by the memorandum and by the other circumstances proved.

"One who makes a promise which cannot be performed without the consent or cooperation of a third person is not excused from liability because of inability to secure the required consent or cooperation, unless the terms or nature of the contract indicate that he does not assume this risk. And the rule is general that purely subjective impossibility is immaterial." 6 Williston on Contracts, Sec. 1932, pp. 5413-5414. Cf. Hinchman v. City Water Co., 179 Tenn. 545, 167 S. W. (2d) 986.

The rest of defendants' contentions relate to the question of damages. Complainant's claim for losses in rentals was denied by the Master and the Chancellor, and there is now no question before us as to this item. Defendants insist that neither of the other two items, the one for

expenses of alterations and the other for tools and equipment, should have been allowed.

The usual measure of recovery for breach of contract is the value of the promised performance. The general principle is that the plaintiff is entitled to be placed, so far as can be done by money, in the same position he would have been in if the contract had been performed. But the principle cannot be applied where, as here, the defendants' breach prevented complainant from fully performing and made it impossible for him to prove what would have been the value of defendants' performance—what profits, if any, he might have made out of the dealership.

So in such a case, to avoid the harshness that would otherwise result, the complaining party is allowed to recover for his expenses reasonably made in preparation and part performance less the value of any materials or product thereof remaining in his hands. Brady v. Oliver, 125 Tenn. 595, 622-626, 147 S. W. 1135, 41 L. R. A., N. S., 60, Ann. Cas. 1913C, 376; United States v. Behan, 110 U. S. 338, 4 S. Ct. 81, 28 L. Ed. 168; 5 Williston on Contracts, Sec. 1363A; McCormick on Damages (1935 Ed.) 582-586; 1 Restatement of Contracts, Sec. 333.

Under this rule one would ordinarily not be entitled to recover for changes or improvements made upon his own land, since the value thereof would remain in him and inure to his benefit.

But in the special circumstances of this case we think complainant was entitled to recover for the expenses of the alterations of his building. He made these specially for this contract, and the proof shows that they

did not result in any value or benefit to him. They did not enhance the value of the property or the rentals therefrom. Defendants' expert witness appraised the property at $9,565 before, and $9,570 after, the alterations.

So the expenses of these alterations were wasted when performance of the contract was abandoned. In such case the plaintiff may recover for expenditures for labor and materials, reasonably made in part performance of the contract, to the extent that they are wasted if performance is abandoned. Lieberman v. Templar Motor Co., 236 N. Y. 139, 140 N. E. 222, 29 A. L. R. 1089, 1095; 15 Am. Jur., damages, Sec. 137, p. 546, and cases there cited.

But we think complainant was not entitled to recover for the other item—the $495 for loss on tools and equipment. He did testify that he had spent between $1,200 and $1,500 for the tools and equipment and that he had sold the same and sustained a loss of $495 (Tr. pp. 128-129). But in his bill, which was sworn to, he averred: "Complainant not only provided the garage as required by defendants but spent for equipment therein, a sum of approximately $595, including money for tools and other necessary items to complete his contract." (Tr. p. 5.)

Complainant is of course bound by this averment of his bill and is judicially estopped to testify to the contrary, Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 647, 266 S. W. 313. Taking the amount here alleged as $595 spent for tools and equipment, there is no proof to which we can look to support any loss on tools and equipment—no proof to show what these tools and equipment sold for or to show any loss sustained by such sale.

It results that the decree of the Chancellor will be modified as hereinabove indicated and as so modified will be affirmed. A decree will be entered here for complainant for $1,454.96 and the costs below. The costs of the appeal are adjudged one-third against complainant and two-thirds against defendants and the surety on their appeal bond.

Howell and Hickerson, JJ., concur.