**E. R. WALKER, Sr., and E. R. Walker, Jr., partners, d/b/a Cocke County Motor Company, and E. R. Walker, Jr., successor to the partnership, d/b/a Cocke County Motor Company, Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civ. A. No. 1779.**

United States District Court
E. D. Tennessee,
Northeastern Division.

April 17, 1965.

Myers & Myers, Newport, Tenn., Fred Myers, Newport, Tenn., of counsel, for plaintiffs.

Bass, Berry & Sims, Nashville, Tenn., Cecil Sims, Nashville, Tenn., of counsel, for defendant.

NEESE, District Judge.

This is an action for damages for the alleged wrongful cancellation by the defendant of the plaintiffs' automobile dealership franchise, 15 U.S.C. §§ 1221–1225, and for damages for breach of the franchise contract, 28 U.S.C. § 1332. It was commenced as a jury trial; because of the illness of a juror when no alternate was available, however, the plaintiffs withdrew their demand for a jury and, with the concurrence of the defendant, the action was submitted to the Court for adjudication on the transcript of the testimony and briefs. At the time of the procedural change, the Court had under advisement the defendant's motion for a directed verdict as to the alleged wrongful cancellation of the franchise involved.

For about thirty years prior to 1947, Mr. E. R. Walker, Sr. was the franchised dealer for the defendant's products in Newport and Cocke County, Tennessee. In the latter year, Mr. Walker's son and co-plaintiff, Mr. E. R. Walker, Jr., joined him as a partner in the agency. The franchise of the partnership was renewed by an agreement under date of February 1, 1955, which said contract forms the basis of this litigation.

The defendant advised the partnership by letter of March 18, 1957 that its performance was unsatisfactory and that the defendant was not offering the partnership the new standard franchise agreement which was being offered to most of its dealers. This notification was followed, on September 3, 1957, by notice from the defendant that the franchise was being terminated under the terms and provisions of the aforesaid 1955 agreement. The Walkers were advised that they might avail themselves of certain procedures to have the cancellation organizationally reviewed. The partnership availed itself of these procedures, and the effective date of the cancellation was stayed during the defendant's review.

After the review, and under date of March 24, 1958, the plaintiffs were advised that the defendant had cancelled their franchise, effective on June 28, 1958. Thereupon, on May 23, 1958, the plaintiffs instituted proceedings with a state administrative board, under Tennessee statutes, asserting in their pleadings that the defendant had theretofore cancelled the franchise of the plaintiffs. There was a stay of execution of the cancellation pending the administrative proceedings before the state board. After the hiatus brought about by the state proceedings,[1] on May 4, 1961, the defendant notified the plaintiffs that its prior termination of their franchise as of June 28, 1958 " * * * is now effective and final. * * *" Less than three years thereafter, but almost six years after the terminal date set forth by the defendant, the plaintiffs instituted this action. The defendant pleaded the statute of limitations of three years for judicial actions under the Dealer's Day in Court Act. 15 U.S.C. § 1223.

The plaintiffs contend that the statute aforesaid was tolled by the further agreement of Mr. D. C. Burdette, district sales manager for the defendant in the area which includes Cocke County, Tennessee. It is insisted that Mr. Burdette agreed with the plaintiffs that the termination of the franchise agreement as of June 28, 1958 was extended until the conclusion of the state proceedings aforementioned. " * * * There can be no controversy but that a written contract may be modified or amended, after it is made, by the express agreement of the parties to it either in writing or by parol, or by the acts of the parties which evince a meet-

1. Which apparently included an injunction maintaining the status quo of the parties.

ing of their minds in agreement to modify its terms upon any particular point. * * *." Hotchner v. Neon Products, C. A.6th (1947), 163 F.2d 672, 676 [1]. The plaintiffs contend further that they were prevented from bringing an action such as this under the federal statutes until the resolution of the controversy between the parties under Tennessee law.

In pertinent part, paragraph E of the 1955 agreement between the parties provides that the " * * * Dealer acknowledges notice that no one except [certain of defendant's officials named therein, not including any district sales manager] is authorized to execute this agreement or any agreement relating to the subject matter hereof on behalf of the Company, or in any manner to enlarge, vary or modify its terms * * * and they only by an instrument in writing. * * *" The plaintiff Mr. Walker, Jr. conceded that he knew at the time of the purported agreement with Mr. Burdette, that Mr. Burdette was not authorized to enlarge, vary or modify the terms of the 1955 agreement on behalf of the defendant.

One who deals with an agent knowing that he is circumscribed in his authority, and that the agent's act transcends his powers, cannot hold the principal. Arnold v. Locomotive Engineers, etc., C. A. Tenn. (1946), 30 Tenn.App. 166, 172 [4], 204 S.W.2d 191; and, a principal is not bound by its agent's act beyond the limitations of the agent's authority, where a third person, relying on such act, actually knows, or should know, of such limitations. Rule v. Brotherhood's Relief, etc., C.A.Tenn. (1952), 36 Tenn.App. 20, 30 [5], 251 S.W.2d 309. Mr. Walker, Jr. was aware, in addition, that the purported enlargement of the contract of the parties by Mr. Burdette, being verbal, was contrary to the provisions of the contract which required any such modification to be by an instrument in writing.

The plaintiffs also contend that the defendant is estopped to deny Mr. Burdette's unauthorized verbal agreement by reasons of the fact that the defendant continued to do business with them on a manufacturer-dealer basis subsequent to June 28, 1958, and that this constituted a ratification of Mr. Burdette's act by the defendant. However, it is provided in sec. 27 of the 1955 contract, *inter alia,* that " * * * In the event either party has any business relations with the other party after termination of this agreement, such relations shall not be construed as a renewal of this agreement or as a waiver of such termination. * *" There was no evidence presented herein tending to establish the fact that the defendant was aware of all the facts and circumstances surrounding Mr. Burdette's oral agreement; accordingly, the act of Mr. Burdette was not ratified by the defendant and is not binding on it. Shurer v. Green (1866), 43 Tenn. 419.

Thus, it appears that the plaintiffs' action herein under the Automobile Dealer's Day in Court Act, supra, is specifically and effectively barred by that Act. That statute created a new right, prescribed a new remedy, and invoked a specific limitation. It, therefore, is more than procedural; it is a matter of substance, and the failure of the plaintiffs to bring their action within the prescribed time extinguished their cause of action. Cf. Burnett v. New York Central Railroad Company, C.A. 6th (1964), 332 F.2d 529, 530 [2, 3]. The proceeding before the state administrative body, the conclusion of which took place some eight weeks before the running of the federal statute, did not toll the latter.

Pretermitting the bar of the limitation statute for the moment, the Court further finds that the defendant did not coerce or intimidate the plaintiffs as those terms are understood in the said Act. Indeed, it is difficult for this Court to foresee many circumstances justifying the penalty which the Act provides in its present form. The plaintiffs were undoubtedly mistreated by the defendant's personnel. It was insisted by the defendant that they employ salesmen and mechanics which they did not need; that they keep their doors open needlessly; and they were chastised on the basis of unsound quota analyses. Nonetheless,

the "advice" given the plaintiffs by the personnel of the defendant did not rise to the dignity of coercion or intimidation, and the Court must reluctantly find and conclude that the defendant's action in terminating the plaintiffs' franchise was not an unlawful exercise of its business judgment. Cf. Woodard v. General Motors, C.A. 5th (1962), 298 F.2d 121, 128, cited in Garvin v. American Motors, etc., C.A. 3rd (1963), 318 F.2d 518, reversing Garvin v. American Motors Sales Corporation, D.C.Pa. (1962), 202 F.Supp. 667; Globe Motors, Inc. v. Studebaker-Packard Corp., C.A. 3rd (1964), 328 F. 2d 645.

Therefore, the defendant's motion for a directed verdict as to the plaintiffs' cause of action under the Automobile Dealer's Day in Court Act hereby is

Granted, and the complaint dismissed in that respect. It is otherwise Denied.

The plaintiffs' further action is for damages for the defendant's alleged breach of the aforementioned 1955 franchise agreement.[2] Sec. 20 of the contract provides, in pertinent part, that " * * * Upon the termination of this agreement by [the] Company, [the] Company shall purchase or accept upon return from Dealer * * * " certain parts and accessories described in subsection (b) thereof; " * * * delivery of all parts and accessories reacquired by Company * * * pursuant to the provisions of this paragraph 20 shall be made at Dealer's place of business unless Company in writing directs otherwise * * * ".

There is no question about the plaintiffs' requesting the defendant to discharge its obligations under this section and that the defendant sent a representative to the plaintiffs' place of business in Newport, Tennessee, to review such inventory. However, the defendant declined to repurchase those parts and accessories, as agreed, unless the plaintiffs gave the defendant a full release covering any damages they were claiming due to the defendant's purported wrongful cancellation of the franchise agreement involved.[3] When the plaintiffs refused to execute the requested release, the defendant did not repurchase the aforesaid parts and accessories as it had agreed to do.

■ Being left with the aforesaid parts and accessories when the defendant breached its contract, the plaintiff Mr. Walker, Jr. continued to operate the partnership establishment in an effort to dispose of this merchandise. The plaintiffs are entitled to be placed, insofar as can be done by money, in the same position in which they would have been if the contract had been performed. Allen v. Elliott Reynolds Motor Company, C.A. Tenn. (1950), 33 Tenn.App. 179, 230 S. W.2d 418, 424 [12–14].[4]

■ The plaintiffs realized only about fifty percent (50%) of their cost of the items contemplated by the contract between the time of the breach and the institution of this action. The inventory at the end of May, 1961, when the breach of contract occurred, attributable to the agreement, aggregated a total of $43,414.73. The inventory when this action was instituted aggregated $21,-888.00, so that the plaintiffs had realized about $10,763.36 and sustained an actual loss of $10,763.37 within the intervening period. The plaintiffs are also entitled to recover $3,505.35 for the services of Mr. Walker, Jr. in disposing of these parts after the breach. Likewise, they are entitled to specific performance forthwith of their contract as to the inventory of $21,888.00 or judgment for that amount.

2. This part of the action is governed by the six-year Tennessee statute of limitations.

3. Such a requirement was included in the aforementioned standard 1957 agreements but was not included in the 1955 agreement of these parties.

4. The Court would have allowed damages for storage of the accessories and parts for the three-year period involved and reasonable counsel fees had there been any evidence in that respect.

Accordingly, judgment will be entered for the plaintiffs for $36,157.72 against the defendant, which the defendant may reduce to $14,269.72 by specifically performing the aforementioned contract within thirty (30) days from the filing of this memorandum.