NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0353n.06

Nos. 09-6041, 09-6043

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

*May 24, 2011*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| TERRY CROUCH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| PEPPERIDGE FARM, INC., THE KROGER CO. , | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendants-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SCHNUCK MARKETS INC., | ) | |
| | ) | |
| Defendant | ) | |

Before: KEITH, MCKEAGUE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Terry Crouch delivered Pepperidge Farm bread products to retail stores around Memphis. When Kroger suspected Crouch of theft through improper billings, it banned Crouch from its stores. Crouch later sold his distributorship, and Pepperidge Farm deducted Kroger's losses from the proceeds of the sale. Crouch sued Pepperidge Farm, Kroger, and another regional grocer alleging breach of contract, conversion, and interference with his business relationships. The district court granted the defendants summary judgment on all of Crouch's claims. We reverse as to Crouch's conversion claim but affirm as to the rest.

I.

Crouch was an independent Pepperidge Farm distributor in the Memphis area from 1993 to 2007. On January 17, 2005, Crouch and Pepperidge Farm signed a consignment agreement that granted Crouch the exclusive right to deliver products to thirteen stores, including five Krogers and three Schnuck Markets. Crouch was responsible for delivering new product, removing stale or damaged product, verifying the quantity of outgoing and incoming product with each store's receiving clerk, and crediting or billing the store accordingly. Crouch received a commission for product delivered, and an offset for product removed.

In the fall of 2006, Kroger began reviewing inventory-difference reports throughout the region where Crouch worked. Kroger discovered that store #430, which is on Crouch's delivery route, was billed for significantly more Pepperidge Farm products than a comparable store, #405, in another county. Kroger then compared the amount of Pepperidge Farm product each store received to the amount purchased by customers. Store #430 paid for $38,367 more product than it sold, while store #405 had just $91 variance in the same product during the same period. Kroger then conducted surveillance and manual inventories to find the source of the discrepancies.

On January 25, 2007, Kroger analyst Ronny Joyner inventoried Pepperidge Farm products at store #430. The next morning, several Kroger risk-management employees monitored the security cameras as Crouch made his delivery. These employees testified by deposition that the Kroger receiving clerk, Galvester Sanders, never verified the quantity of products taken in or out, as required by Kroger procedure. They also testified that Crouch did not leave a delivery ticket. Kroger says it has video evidence that supports its position. Both Crouch and Sanders dispute Kroger's

-2-

allegation. They each testified that Sanders verified the product counts, that Crouch drafted a handwritten ticket because his computer was not functioning, and that Sanders signed the ticket that day. Crouch acknowledges that these actions are not seen on the video, but suggests that they occurred outside the camera's sight. After the delivery, Joyner again inventoried the Pepperidge Farm product. On January 30, 2007, during his next delivery, Crouch generated a computer ticket for the January 26 delivery. On that ticket, Crouch claimed to have delivered 288 more loaves of bread (at a cost of approximately $548) than Joyner's manual inventory reflected.

On March 16, 2007, Kroger risk-management personnel met with Crouch and asked him to explain the inventory discrepancies. When Crouch offered no explanation, Kroger's risk manager, Tim Davey, banned Crouch from servicing any Kroger store. During the meeting, Crouch called his Pepperidge Farm regional contact, Fred Sala, and told him of Kroger's accusations. Sala also spoke with Davey, who confirmed that another distributor would need to service Kroger. Around March 20, 2007, Schnuck Markets, a regional grocer on Crouch's route, learned of Kroger's accusations against Crouch and prohibited Crouch from servicing its stores.

Crouch believed that without Kroger and Schnucks, his distributorship was no longer viable. He negotiated the sale of his route to another distributor, and set the price at $55,000. The parties signed a contract of sale around March 22, 2007. Under that contract, Pepperidge Farm was entitled to retain funds from the sale proceeds to repay any debts Crouch owed to Pepperidge Farm.

On May 30, 2007, Pepperidge Farm authorized Kroger to withhold $38,367, the amount Kroger believed it had been overcharged, from its next invoice payment. Then, to repay itself,

Pepperidge Farm withheld the same amount from the proceeds of the sale of Crouch's distributorship.

Crouch thereafter filed suit against Pepperidge Farm, alleging that it converted his property by improperly retaining his money and breached the consignment agreement by prohibiting him from servicing stores within his territory. Crouch also sued Kroger and Schnucks, alleging that each tortiously interfered with his contract or business relationship with Pepperidge Farm by banning him from its stores. The defendants moved for summary judgment, and the district court granted their motions. Crouch now appeals from the judgment in favor of Kroger and Pepperidge Farm, arguing that genuine issues of material fact exist on his claims.

II.

We first address an evidentiary issue. Crouch argues that both Kroger and Pepperidge Farm rely upon an unauthenticated hearsay document in support of their motions for summary judgment. Specifically, Kroger auditor Frank Nahlen created the spreadsheet detailing the inventory shortages in Pepperidge Farm product at stores #430 and #405. Nahlen never gave a deposition or provided an affidavit authenticating the spreadsheet. Kroger and Pepperidge Farm respond that Crouch waived this argument by not properly raising it in the district court, and that, in any event, the document meets the business-record hearsay exception under Federal Rule of Evidence 803(6).

We need not resolve this dispute. In this case, the spreadsheet does not state that Crouch is responsible for Kroger's losses, so it cannot be used to establish his culpability. Instead, the document merely demonstrates that Kroger and Pepperidge Farm—the readers of the spreadsheet—believed that Kroger #430 suffered vast and disproportionate losses in Pepperidge

Farm products. We therefore consider the document only for the non-hearsay purpose of evaluating its effect on Kroger and Pepperidge Farm. *See Anthony v. DeWitt*, 295 F.3d 554, 563 (6th Cir. 2002). We find the document was adequately authenticated for this purpose by Kroger analyst Ronny Joyner and Kroger risk manager Tim Davey, who testified to their knowledge of the spreadsheet and the inventory losses it substantiates. *See* Fed. R. Evid. 901(a).

III.

A.

We review the district court's grant of summary judgment de novo, drawing all reasonable factual inferences in favor of Crouch. *See Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 476 (6th Cir. 2010). Summary judgment is appropriate when "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c)(2) (2009). A genuine issue of material fact exists when there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B.

1.

Crouch claims that Pepperidge Farm breached the consignment agreement by preventing Crouch from servicing the Kroger and Schnucks stores in his territory, "even though this was done at Kroger's and Schnucks' request." According to Crouch, Pepperidge Farm's enforcement of its customers' demands resulted in an anticipatory breach of the consignment agreement. In Tennessee, an anticipatory breach occurs when one contracting party voluntarily commits an act rendering it unable to perform under the contract, or, through its words and conduct indicates its "total and

-5-

unqualified refusal to perform the contract." *UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 120 (Tenn. 2007) (internal quotation marks omitted). Here, Pepperidge Farm never indicated any unwillingness or inability to perform under the contract; it was Crouch who could not meet his delivery obligations.

Crouch attempts to shift responsibility back to Pepperidge Farm by citing *Allen v. Elliott Reynolds Motor Co.*, 230 S.W.2d 418 (Tenn. Ct. App. 1950). He argues that Pepperidge Farm was required to provide him with an exclusive distributorship, and that Pepperidge Farm's inability to obtain consent from Kroger or Schnucks does not excuse that obligation. *Allen* held that where a contract does not specifically allocate the risk of failure to obtain necessary consent from a third party, the risk lies with the party responsible for obtaining consent, and that the responsible party is not excused from its contractual obligations by its inability to do so. *See id.* at 423-24.

Our case is different. The consignment agreement here includes two relevant paragraphs:

> If, by reason of illness or vacation or any other cause, [Crouch] shall be unable at any time to provide or maintain the efficient distribution service contemplated by this Agreement, [Crouch] will make other suitable arrangements at his/her own expense . . . but if [Crouch] is unable or fails to do so, [Pepperidge Farm] is authorized in its discretion to provide and/or maintain such service as [Crouch's] agent and at [Crouch's] expense and risk.

> If [Crouch] fails for any reason to provide or maintain satisfactory distribution to any segment of the Territory or to any retail store within the Territory, and such failure is not remedied within five days after written notice thereof from [Pepperidge Farm], [Pepperidge Farm] . . . may make other arrangements, on either a permanent or temporary basis, in the discretion of [Pepperidge Farm], for the service of such store or segment of the Territory, as the case may be. If such arrangements for service are made on a permanent basis, the retail store or segment of the Territory involved shall be deemed to be no longer included in the Territory . . . all without compensation or remuneration to [Crouch].

This language expressly authorizes Pepperidge Farm to service any store that Crouch cannot service for any reason. Thus, unlike in *Allen*, the contract here contemplates Crouch's inability to obtain consent to distribute within his territory, assigns that risk to Crouch, and grants Pepperidge Farm the discretion to provide substitute service without compensation to Crouch. We therefore conclude that *Allen* does not apply to this case.

We also agree with the district court's conclusion that Pepperidge Farm did not terminate the consignment agreement, with or without cause. As the district court found, the parties mutually and voluntarily terminated the contract when Crouch sold his distributorship. As a result, Pepperidge Farm committed no breach, and the district court properly dismissed this claim.

2.

To establish a claim for conversion under Tennessee law, Crouch must demonstrate that Pepperidge Farm exercised control over his property, without his consent, for Pepperidge Farm's benefit. *See Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977). Pepperidge Farm's good faith is generally immaterial. *Id*.

Crouch contends that Pepperidge Farm improperly withheld $38,367 from the sale of his route. Pepperidge Farm responds that Crouch failed to present "affirmative evidence . . . to refute Kroger's losses." The appropriate question, however, is not *whether* Kroger suffered losses—there is no real dispute that it did—but *why*. As the district court stated and both parties concede, if Crouch caused Kroger's losses, Pepperidge Farm was entitled to retain the money. But if Crouch did not cause the losses, Pepperidge Farm converted Crouch's funds.

The district court held that Crouch's mere claim that he did not cause Kroger's losses was insufficient to rebut Kroger's evidence that he did. We disagree. Crouch offers his own deposition testimony denying any wrongdoing, which we must accept as true. *See Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010). At his deposition, Crouch did more than just deny wrongdoing; he affirmatively testified that he followed the proper procedures in delivering and removing product from store #430. That testimony, even if it was the only evidence disputing Kroger's claims, is sufficient to create a genuine issue of material fact and avoid summary judgment. *See id*; Fed. R. Civ. P. 56(c)(2) (2009).

But we have more than Crouch's word on the matter. First, Crouch provides a copy of the January 26, 2007, handwritten invoice that Kroger claims he never created. The invoice shows the signature of Sanders, the Kroger receiving clerk on duty, who confirmed through deposition testimony that he counted the product and signed the invoice that day. Pepperidge Farm counters that Crouch should have produced the invoice earlier, and that Sanders is not credible because he was implicated as an accomplice in the theft. But those are fact issues. Second, Crouch offers testimony from both receiving clerks at Kroger #430, who state that Crouch always complied with the check-in procedures, and neither had knowledge that would implicate Crouch in the inventory discrepancies. Pepperidge Farm counters that "[t]he witnesses' lack of knowledge on the subject is not affirmative proof rebutting Kroger's claimed losses." But again, the fact of the losses is not the issue here. And third, Crouch offers evidence that Kroger's inventory-loss calculation did not account for other factors (such as shoplifting, reshopping, and other Pepperidge Farm product deliveries) that theoretically could have contributed to the discrepancies.

When reviewing a summary judgment motion, we may not weigh the evidence or make credibility determinations. *Schreiber*, 596 F.3d at 333. That is what Pepperidge Farm asks us to do here. The district court erred in granting summary judgment on this claim.

C.

1.

Crouch claims that Kroger caused Pepperidge Farm to breach the consignment agreement by banning him from Kroger stores. Tennessee recognizes a common-law tort for inducement of breach of contract. *See Freeman Mgmt. v. Shurgard Storage Ctrs.*, 461 F. Supp. 2d 629, 637 (M.D. Tenn. 2006). To succeed on this claim, Crouch must establish that Kroger's actions caused Pepperidge Farm to breach the consignment agreement. *See id*. But we have already found that there was no breach, so there can be no inducement of a breach. The district court properly granted summary judgment on this claim.

2.

Crouch also claims that Kroger, by improper means or with improper motive, interfered with "his business relationship with Pepperidge Farm." Tennessee recently recognized the tort of intentional interference with business relationships. *See Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002). But this tort protects non-contractual business relationships, so we will not apply it to the contractual relationship between Crouch and Pepperidge Farm. *See id.* at 698-701 & n.4.

We also agree with the district court's determination that Crouch has not established that Kroger intended to interfere with his business relationship, or that Kroger acted with improper

motive or means. The court's analysis on these factors was thoroughly reasoned, so we see no reason to repeat it here. The district court properly granted summary judgment on this claim.

The district court's judgment is reversed with respect to Crouch's conversion claim against Pepperidge Farm; that claim is remanded to the district court for further proceedings consistent with this opinion. The district court's judgment is otherwise affirmed.