INTERNATIONAL HARVESTER CO. v. CAMPBELL.—76 S. W. (2d) 986.

Eastern Section.    August 25, 1934.

Petition for Certiorari denied by Supreme Court, December 14, 1934.

Jennings & O'Neil, of Knoxville, for plaintiff in error.
O. L. McMahan, of Morristown, for defendant in error.

FAW, P. J. Mrs. H. E. Campbell, plaintiff below, obtained a judgment, upon the verdict of a jury, for $2,000 and costs, against International Harvester Company, a corporation, in the circuit court of Hamblen county, and, after its motion for a new trial had been overruled, the International Harvester Company appealed in error to this court and has assigned errors here.

For convenience, the parties will be designated herein as they were in the trial court—Mrs. H. E. Campbell, as plaintiff, and International Harvester Company, as defendant.

There are twenty-three assignments of error, but two of the questions raised by assignments of error lie at the threshold of the consideration of the case, and, if the contentions on behalf of the defendant with respect to these two questions are sound, there will be no occasion to consider other questions presented by the assignments of error. We will, therefore, state certain record facts necessary to an understanding of the two questions above indicated.

Mrs. H. E. Campbell, as plaintiff, commenced this action in the circuit court of Hamblen county, on May 26, 1933, by summons for "the International Harvester Company, a foreign corporation, domesticated under the laws of the State of Tennessee, and the Employees' Benefit Association thereof." The summons was executed by service upon an agent of International Harvester Company in Shelby county, Tenn., and that company alone was brought before the court as a defendant.

The object of the suit was to recover the sum of $2,000 which the plaintiff averred was due her as a "death benefit" by reason of the membership of her husband, H. E. Campbell, in the said Employes' Benefit Association, and his alleged accidental death on October 2, 1932.

The Employes' Benefit Association is a voluntary, unincorporated association, established in the year of 1908, and maintained since that time. Its constituent members are "the International Harvester Company and affiliated companies operating in the United States and Canada and such employes of said Companies in said countries as elect to join therein."

The object of the Employees' Benefit Association, as stated in its printed "Regulations," and as shown by the undisputed proof, is "to administer without profit and at the lowest possible cost to the employee members, a fund created by contributions from the Company and employe members and to pay disability benefits to employe members in case of sickness and accident (except accidents compensated under Workmen's Compensation Laws), and death benefits to their designated beneficiaries in case of death, all as" provided in said printed "Regulations."

The regulations provide that "contributions from members shall be disbursed only for the payment of benefits."

322

The management and control of the association is vested in a board of trustees, and the executive officer is a superintendent appointed by the board of trustees and holding his office at the pleasure of the board.

The International Harvester Company is a corporation chartered and organized under the laws of the state of New Jersey.

The "affiliated companies" are four corporations, as follows: (1) International Harvester Company of America, a Wisconsin corporation; (2) Harvester Company of Canada, a Canadian corporation; (3) the International Harvester Company, Limited, of Indiana; and (4) the Wisconsin Steel Company.

The International Harvester Company is a manufacturing corporation and operates about eighteen manufacturing "plants" in "various parts of the country." The International Harvester Company of America is a separate and distinct corporation from International Harvester Company, and is a "sales corporation," engaged in selling and distributing the "products" manufactured by International Harvester Company. The Wisconsin Steel Company is a mining corporation, owning coal mines in Kentucky, and mines the coal used by International Harvester Company in the operation of its manufacturing plants. The record does not disclose the kind of business conducted by the International Harvester Company, Limited, of Indiana.

Employees of International Harvester Company and employees of each and all of the aforesaid "affiliated companies" are eligible to membership in the Employes' Benefit Association, subject, however, to a "required physical examination" and "the approval of his application by the Superintendent." H. E. Campbell, the deceased husband of plaintiff, was an employee of International Harvester Company of America from the year of 1918 until his death on October 2, 1932—a period of about fourteen years. He was what was known in the parlance of his employer as a "blockman," that is, a traveling salesman of farming implements and farm machinery in a prescribed territory called a "block." Throughout said period the International Harvester Company of America maintained an office and place of business in the city of Knoxville, Tenn., in charge of an officer or employee of said company known as a "Branch Manager," who was the immediate superior of H. E. Campbell, to whom Campbell reported and through whom he received his salary.

On July 7, 1920, said H. E. Campbell made application for membership in the Employes' Benefit Association, the application being made by filling in the blanks in a printed form of application prescribed by the "Regulations" of said association, and signing his name thereto.

It appears from statements in the application that the applicant, was then employed by "International Harvester Company of A.," at Knoxville, Tenn., as "blockman," and that he was 31 years of age and residing in the city of Harriman, Tenn.

The applicant applied for membership (class B) in said Employes' Benefit Association, and his application contained, among others the following agreements, requests and directions, viz:

"I ——— agree to be bound by the regulations of said Association, a copy of which has been by me received, and by any other regulations of said Benefit Association hereafter adopted and in force during my membership."

"I also agree, request and direct that said Company, by its proper agents, and in the manner provided for in such rules, shall, during the continuance of my employment, apply as a voluntary contribution from any wages earned by me under said employment, one and one-half (1½) per cent. of my wages, for the purpose of securing the benefits provided in the regulations for a member of Class B of said Association.

"I also agree, for myself and those claiming through me, to be governed by the regulations providing for final and conclusive settlement of all claims for benefits, or controversies of whatever nature, by reference to the Superintendent of the Benefit Association, and an appeal from his decision to the Board of Trustees."

Said application of H. E. Campbell was "approved" by the superintendent of the Employes' Benefit Association on July 9, 1920, to take effect July 16, 1920, and his membership continued until his death as aforesaid, with his wife (the plaintiff herein) designated as the beneficiary of death benefits.

The provisions controlling the amount of the "death benefit" payable to the beneficiary of any deceased member are found in sections 4 and 5 of article 8 of the printed "Regulations" of the Employes' Benefit Association, as follows:

"4. Full Death Benefit. Full death benefit where the death is the result of sickness shall be an amount equal to one year's average wages of the member, but not to exceed $2,000.00. Where the death is due to accident, full death benefit shall be an amount equal to two years' average wages but not to exceed $4,000.00.

"5. Accident Death Benefit. To establish a claim for accident death benefit there must be external, positive and visible evidence of physical injury sufficient to cause death. Asphyxiation suffered by accidental means and causing death shall be considered as death due to accident."

On October 20, 1932, plaintiff made formal claim on the Employes' Benefit Association for a death benefit of $2,000, and the association admitted her right thereto, and a check payable to plaintiff was drawn and forwarded to T. H. Williams, branch man-

ager of International Harvester Company of America, at Knoxville, Tenn., for delivery to plaintiff, but, before delivery of said check to plaintiff, she tendered additional "proofs" and made claim for "an accident death benefit" of $4,000, instead of the death benefit of $2,000 first claimed.

The association, by letter of its superintendent to plaintiff's attorney, declined to pay an "Accident Death Benefit" upon the proofs submitted, but inclosed a copy of the regulations, and concluded its letter with the following statement: "We will be glad to consider any arguments or evidence you may wish to submit, but after that the further procedure in connection with the case would be handled under Article 10 of the Regulations."

Negotiations followed which resulted in an agreement by plaintiff to accept said check for $2,000 upon certain conditions stipulated in an instrument signed by her and accepted by the association, which instrument is as follows:

"Whereas, one Henry E. Campbell, deceased, was in his lifetime a member of the Employes' Benefit Association of International Harvester Company under Certificate No. SD-5634; and

"Whereas, the said Henry E. Campbell, while so a member of said Association died in the city of Morristown, Tenn., on to wit, October 2, 1932, and the cause of death as certified in the certificate of death is given as 'Cerebral hemorrhage;' and thereupon by virtue of his membership in said Association his widow, Gertrude H. Campbell, became entitled to the payment of death benefits by said Association and on to wit October 20, 1932, said Gertrude H. Campbell signed a formal claim for benefits in the sum of Two Thousand Dollars ($2,000) whereupon the Association issued its check payable to Gertrude H. Campbell for said sum of money, which check together with a release in full was tendered to Gertrude H. Campbell and declined on or about to wit, November 1, 1932; and

"Whereas, a difference of opinion has arisen now between the undersigned and said Employes' Benefit Association as to whether the said Gertrude H. Campbell is entitled under the Regulations of said Association to the equivalent of one year's or of two years' average wages earned by her said husband; the Superintendent of said Association having ruled that the said widow is entitled to but one year's average wages; and

"Whereas, it is proposed by said Association to pay at this time the sum of Two Thousand and No/100 Dollars ($2,000) being the equivalent of one year's average wages earned by said Henry E. Campbell.

"Now, therefore, the undersigned Gertrude H. Campbell hereby accepts and acknowledges receipt of said sum of Two Thousand Dollars ($2,000) but with the express understanding that said amount is not to be in full of said benefits unless upon final adjudi-

cation of said dispute by the Appeal Board of said Association, the Board of Trustees of said Association, or a court of competent jurisdiction, or both, the decision of said Superintendent is upheld; in which event this receipt shall be in full of all claims.

"Dated this 24 day of December, A. D. 1932.

"Gertrude H. Campbell.

"In the presence of:

"J. S. Parker

"Henry Parker."

Thereafter plaintiff brought this action against the International Harvester Company, in the manner before stated, to recover an additional sum of $2,000, upon averments in her declaration, in part as follows:

"Plaintiff alleges that she is the widow of H. E. Campbell, deceased, and her said husband, during his lifetime was an employe as salesman of the International Harvester Company, a foreign corporation, and domesticated to do business in Tennessee, and the said International Harvester Company has provided for, organized and maintains an association of its employes known and designated as Employes' Benefit Association of the International Harvester Company and affiliated companies. That the purpose of the organization and maintenance of said association, in the main, is to afford financial protection in the equivalent of insurance upon the life and health of each of said employes. That as evidence of said organization, and for its management and control said company provided for its use and that of said Benefit Association a Book of Regulations, being captioned or styled,

"Regulations—Employes' Benefit Association—International Harvester Company and Affiliated Companies."

Plaintiff then stated the substance of certain provisions of the "Regulations" of the Employes' Benefit Association, and quoted sections 4 and 5 of article 8, as hereinbefore quoted, and then averred that "she has made and caused to be made ample proofs of claim, in compliance with the rules and regulations of said Benefit Association, said proof being in writing by affidavits of physicians and eye witnesses."

By leave of the court, plaintiff amended her declaration shortly after it was filed so as to make profert of said "Book of Regulations" and make same a part of the declaration.

The remaining averments of plaintiff's declaration are as follows:

"Plaintiff further alleges that her said husband was a regular employee of said International Harvester Company, his average salary being $2,000.00 or excess thereof; that plaintiff was by her said husband designated as beneficiary of any accident, health or death benefits he might become entitled to as a member of said association, and employe of said Company, and that as a result of

the death of her said husband, which was accidental, as will here-inafter be shown, she is entitled to receive from said International Harvester Company, and of Said Benefit Association, the sum of Four Thousand ($4,000.00) Dollars, in accordance with the terms and provisions contained in the book of regulations of said Company and its Employes' Benefit Association; that said defendant has paid her heretofore the sum of Two Thousand ($2,000.00) Dollars, with the written understanding that payment of said sum would in nowise prejudice her rights in the collection of the full amount of death benefit but said company and association has failed and refused to pay her the full amount provided in death benefit cases, and thereby has breached its contract with said employe, now deceased, and her as beneficiary, and she avers that she is justly entitled to receive of said defendant company and Employes' Benefit Association the full amount of death benefit provided or Two Thousand ($2,000.00) Dollars additional, and accrued interest from the date of the death of her said husband.

"Plaintiff now alleges that on October 2, 1932, while driving his own automobile in an eastwardly direction on West Second North Street in Morristown, Tennessee, Plaintiff's husband accidentally drove his car upon and over the body of one ———— Davis, the infant son of Charles Davis, of Morristown, Tennessee, thereby greatly crippling and maiming said child, as a result of which plaintiff's husband received at the time and place, a terrific physical shock, causing his death within about thirty minutes from the time of said accident. That immediately after said accident plaintiff's husband was taken to the Morristown General Hospital where said injured child had been taken for treatment, and upon his arrival and while suffering so intensely from physical shock, it became necessary for him to have the services of a physician; and after being treated for his shock the said physician directed that he be taken home, put to bed and kept quiet; that he was immediately taken home by friends, and after undressing and getting in bed. and before said shock he had received at the time of said accident had subsided and as a result of said shock, he died suddenly.

"Plaintiff alleges that her said husband's death was caused solely by the accident in question, and the attending shock thereof and that within the terms and provisions of the book of regulations of the defendant and said Employes' Benefit Association thereof, and as a matter of fact and law, his death was an accidental death, and by reason thereof plaintiff, as his beneficiary, is entitled to recover of said International Harvester Company and its Employes' Benefit Association the balance justly due her as full death benefits incident to the death of her said husband.

"Plaintiff therefore sues the defendant, International Harvester Company and its Employes' Benefit Association, for the sum of

Two Thousand ($2,000.00) Dollars, and accrued interest, and demands a jury to try the issues to be joined."

Defendant International Harvester Company demurred to the declaration on two grounds as follows:

"I. Because the alleged manner and cause of plaintiff's deceased husband's death as set out and averred in her declaration does not bring his death within the purview and meaning of the regulations of Employes' Benefit Association, International Harvester Company, and affiliated companies, governing and fixing liability of said Association for the accident and death benefit sued for by plaintiff, as provided by sections 4, 5 and 11, of article 8 of said regulations.

"II. Because the declaration does not aver that the plaintiff prior to the bringing of this suit complied with sections 1, 2 and 3 of Article 10 of said regulations, said sections stipulating and expressly providing that the remedies of the plaintiff must be exhausted by following the course of action with respect to claim for the amount sued for in this case, before suit can be brought and maintained thereon, and further providing that no such suit shall be instituted until claim has been first presented to the Superintendent and the right of appeal from his decision to the board of appeals, and thereafter to the board of trustees, have first been exercised and exhausted. Wherefore, defendant prays the judgment of the Court whether it be required to further answer and that plaintiff's suit be dismissed."

The demurrer was overruled by the trial court, and defendant's first assignment of error in this court complains of this ruling on the demurrer.

It is seen that the first ground of the demurrer is based on sections 4, 5, and 11 of the "Regulations" of the Employes' Benefit Association. We have hereinbefore quoted said sections 4 and 5. Said section 11 is as follows:

"11. Accident—Claim for Benefits—How Established. To establish a claim for accident disability benefits there must be external, positive and visible evidence upon the body of physical injury by accident sufficient to cause immediate disability. In cases of alleged sprain, strain, wrench and the like where physical evidence of disability is lacking, a member must furnish substantial satisfactory history of violence sufficient and liable to cause disabling injury; otherwise disability benefits on account of accident will not be allowed."

We think section 11, just quoted, relates alone to a claim for "accident disability benefits" where the "disability" does not result in death. The requisites for the establishment of a claim for an "accident death benefit" are defined by section 5 of article 8, which we have hereinbefore quoted.

It is also seen that the second ground of the demurrer is based upon sections 1, 2 and 3 of article 10 of the "Regulations," which sections constitute all of article 10, which article is as follows:

"Article 10

"Settlement of Controversies

"1. Decisions of Disputes by Superintendent. Whenever any claimant has been unable by reason of disagreement as to facts or law to settle a claim with agents or representatives of the Association subordinate to the Superintendent, he shall have the right to refer the dispute in a written statement to the Superintendent. Such statement shall be submitted to the Superintendent within 60 days of the time of the decision from which the appeal is taken, and if not submitted within such time the claimant shall be bound by such decision.

"The decision of the Superintendent shall be final, subject to appeal to the Board of Trustees as herein provided, on all questions concerning the nature, extent, existence and duration of any disability, the allowance and payment of claims, and on all other questions arising under the administration of these regulations and of the affairs of said Association.

"2. Appeals—How Taken. The member may appeal to the Appeal Board of the Board of Trustees from any decision of the Superintendent within thirty (30) days after notice of such decision has been received by the member. Such Appeal Board shall be elected by the Board of Trustees at the first meeting following the annual election, and shall consist of four members chosen from among the Board of Trustees, two of whom shall be trustees chosen by the employes and two trustees appointed by the Company. Said Appeal Board shall serve for the period of one year and until their successors are elected.

"At the time of electing said Appeal Board, the Board of Trustees shall also elect an alternate for each member of the Appeal Board, each alternate to have the same qualifications as the member for whom he is alternate and the alternate shall serve as a member of said Appeal Board in case of death of the member for whom he is an alternate or in case said member ceases to be a member of the Association or is unable for any reason to attend any meeting of the Appeal Board.

"The appeal to said Appeal Board may be taken by written notice to the Superintendent of the desire of such member to appeal. The Appeal Board shall, within a reasonable time after the appeal is taken, set a place and hour for hearing and notify the appellant, at which time and place he may appear in person or by attorney and produce or file written or oral testimony and argument. The Appeal Board shall dispose of such appeals on the basis of the facts and evidence appearing in the records of the

Association, and such additional facts and evidence and argument as the claimant may submit. The decision of such Appeal Board, if in favor of the member, shall be final and binding upon the Association, and if adverse to the member it shall be final and binding upon the member or his legal representative or beneficiaries, unless an appeal from such decision is taken to the full Board of Trustees by filing a request therefor with the Superintendent within thirty (30) days after notice of the decision of the Appeal Board.

"All appeals shall be decided by a majority vote of the entire Appeal Board. In case of a tie vote, said appeal shall be automatically taken to the Board of Trustees and considered and determined by it.

"The Board of Trustees shall hear and decide the appeal at its next meeting on the record certified to it by the Appeal Board. The decision of the Board shall be by a majority vote of the trustees present at the meeting at which the appeal is considered, or at any meeting to which the appeal may be continued, and such decision shall be final and binding upon the member, his legal representatives or beneficiaries and the Association.

"3. Court Jurisdiction. In any jurisdiction where the law permits a suit at law, notwithstanding the foregoing provisions for finality of the decision of the Appeal Board or Board of Trustees, no such suit shall be instituted until the claim has been first presented to the Superintendent and the right of appeal from his decision to the Board of Appeal, and thereafter to the Board of Trustees, have first been exercised and exhausted. Any suit so brought to contest the decision of the Board of Trustees with respect to any matter shall be instituted only against that one of the associated companies employing such member, which company shall perform all legal obligations of the Association subject to reimbursement by the Association."

██ We are not prepared to hold that the learned trial judge erred in overruling the first ground of the demurrer, although this conclusion is not free from doubt. It is averred in the declaration that, as the result of accidentally driving his car upon and over the body of a child—greatly crippling and maiming said child —plaintiff's husband received "a terrific physical shock, causing his death within about thirty minutes from the time of said accident." It is true that plaintiff cannot establish a claim for "accident death benefit" without proof of external, positive, and visible evidence of physical injury to her deceased husband sufficient to cause his death; but this was a matter of evidence, and, as demurrers are "not favored" and the courts should entertain every reasonable presumption in favor of the declaration when assailed by a demurrer (McFarland v. Mass. Bonding & Insurance Co., 157 Tenn., 254, 260, 8 S. W. (2d), 369, 64 A. L. R., 962), we are inclined

to the opinion (and so hold) that it was not essential for plaintiff to aver that there was external, positive, and visible evidence of physical injury sufficient to cause death.

We are also of the opinion that it was not error to overrule the second ground of defendant's demurrer, for the reason that it did not appear from the declaration that the plaintiff had failed to exhaust her remedy within the association provided by article 10 of the regulations, supra. This was a matter of defense.

In addition to the general issues of nil debit and non assumpsit, defendant interposed three special pleas as follows:

(a) "It denies that H. E. Campbell, deceased, who in his lifetime was the husband of the plaintiff, was an employe of the defendant, International Harvester Company, on October 2nd, 1932, as the plaintiff in her declaration hath alleged;" (b) "defendant says that the death of H. E. Campbell, plaintiff's husband, was not caused by a physical injury, accidentally sustained or otherwise sufficient to cause death, of which said physical injury there was external, positive and visible evidence;" and (c) "defendant says that plaintiff has not complied with sections 1, 2 and 3 of Article 10 of the Regulations constituting the contract sued on in that she has not exhausted the remedies afforded her thereby and in that she has not sued the company for whom deceased H. E. Campbell was working in manner and form as therein provided."

The two questions to which we had reference in our statement, near the outset of this opinion, that two propositions advanced by the assignments of error are, if sustained, determinative of the whole case, were made below by the pleas which we have designated as (a) and (c), supra, and were specifically relied upon by defendant in its motion for a directed verdict made at the close of plaintiff's evidence and renewed at the close of all the evidence. It appears from undisputed evidence in the record that plaintiff's deceased husband, H. E. Campbell, was at the time of his death, and continuously for approximately fourteen years theretofore, an employee of the International Harvester Company of America, and there is no proof that he was at any time an employee of the defendant International Harvester Company.

It also appears from undisputed evidence that plaintiff did not appeal, or attempt to appeal, to the appeal board from the decision of the superintendent of the Employes' Benefit Association denying her claim to a death benefit, and that plaintiff did not in any manner or at any time invoke a decision of said appeal board or the full board of trustees with respect to her claim.

It is very generally held that it is competent for members of a mutual benefit association to agree that controversies between the members and the association relating to property rights, such as disability or death benefits, shall be referred to and decided by tribunals established within the association. In some jurisdictions

it is held that, where the rules of the association provide that the decision of its tribunals shall be final, a member may not resort to the civil courts even after a decision adverse to him by the tribunal established by the association (see Annotation, 51 A. L. R., 1425) ; but the courts so holding (with respect to property rights, as distinguished from mere matters of discipline) are in a decided minority.

However, the great weight of the authorities supports the rule that, where the laws of the association unequivocally provide that a member shall seek and exhaust his remedies within the association before he may litigate his rights in the courts, the remedies within the association must be exhausted before there can be a resort to the courts. The general rules on this subject are summarized in 7 C. J., pages 1121, 1122, section 83; and a great number of adjudged cases relating thereto are cited and digested in case notes or annotations as follows: 3 Ann. Cas., 211; Ann. Cas., 1915B, 318; 8 L. R. A. (N. S.), 916; 52 L. R. A. (N. S.), 823; 51 A. L. R., 1420. See also 1 Couch on Insurance, section 266, and 8 Couch on Insurance, section 1992.

But we need not resort to other jurisdictions for authority on the question here presented. In Honea v. American Council, J. O. U. A. M., 139 Tenn., 21, 201 S. W., 127, it was held that (1) a beneficiary order or association may validly stipulate that remedies must be exhausted by an appeal to a higher tribunal of the order, provided for the adjudication of claims, though it may not wholly deprive its member of the right to invoke the aid of the courts of the land, and (2) that, where property rights are involved, a member may first bring suit without appealing to the judicatories within the order, unless there is found incorporated in the laws of the order, or the contract, an express inhibition to the contrary.

Stated conversely, the latter rule is, of course, that, where there is in the laws of the association, or in the contract, an express inhibition against the institution of a suit in the civil courts until the member's remedies within the association have been exhausted, a suit cannot be maintained contrary to such inhibition.

In Barthell v. Zachman, 162 Tenn., 336, 341, 36 S. W. (2d), 886, 887, the court cited with approval the opinion in Honea's Case, supra, and said: "Where tribunals are provided by the constitution and the laws of a fraternal society, which unequivocally require, as does article LIII, section 21, of the constitution of the order, that members first exhaust their remedies within the society before litigating their contentions in the courts, remedies within the society must be exhausted before the members can resort to the courts."

In the instant case, plaintiff had the right to appeal from the adverse decision of the superintendent to the appeal board, and,

in the event of a decision adverse to her by the appeal board, to the full board of trustees; and it is provided by the regulations that the decision of the board of trustees "shall'be final and binding upon the member, his legal representatives or beneficiaries and the Association." But, doubtless in contemplation of the fact that in some jurisdictions a mutual benefit association may validly provide, by regulation or contract, that the decisions of its own tribunals shall be final and in other jurisdictions it may not, the "Regulations" here involved provided further that, "in any jurisdiction where the law permits a suit at law, notwithstanding the foregoing provisions for finality of the decision of the Appeal Board or Board of Trustees, no such suit shall be instituted until the claim has been first presented to the Superintendent and the right of appeal from his decision to the Board of Appeal, and thereafter to the Board of Trustees, have first been exercised and exhausted." This is clearly an "express inhibition" against a suit at law until the claimant has first exercised and exhausted the remedies available within the association.

There is no evidence tending to show that plaintiff was in any wise, by acts, conduct, or representations of any representative of the Employes' Benefit Association or the defendant International Harvester Company or any of the affiliated companies, prevented from pursuing the remedies prescribed by article 10 of the aforesaid regulations.

It will be remembered that, by one of its special pleas, the defendant also pleaded that "plaintiff has not complied with sections 1, 2 and 3 of the Regulations constituting the contract sued on . . . in that, she has not sued the company for whom deceased, H. E. Campbell was working." The last sentence of section 3 of article 10 of the regulations (which immediately follows that part of said section 3 last above quoted) provides that "any suit so brought to contest the decision of the Board of Trustees with respect to any matter shall be instituted only against that one of the associated companies employing such member, which company shall perform all legal obligations of the Association subject to reimbursement by the Association."

Plaintiff's husband was employed by the International Harvester Company of America, and it was not sued in this case. It is, therefore, insisted for defendant that plaintiff has not complied with the last-quoted requirement of section 3, article 10, of the regulations. But it will be observed that the provision thus invoked by defendant applies only to a suit "brought to contest the decision of the Board of Trustees with respect to any matter," and this suit was not brought for the purpose thus named, as there is no evidence, and it is not claimed by either of the parties, that there has been a decision of the board of trustees with respect to the subject-matter of this litigation.

However, the defendant's second assignment of error, that there is no evidence to support the verdict of the jury, and defendant's third assignment of error, that the court erred in overruling the defendant's motion for a directed verdict in its favor, are sustained; and it will be so ordered. In view of our conclusion just stated, the remaining assignments of error become immaterial and need not be considered in the determination of this case. Conflicts of evidence upon other and independent issues of fact do not affect the result.

"By material evidence is meant evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case.

"But a conflict of evidence upon a detached or separate feature or fact, even though it is material, should not of itself prevent the giving of peremptory instructions. Facts are frequently material which are by no means determinative; and facts are frequently material in themselves, but become immaterial when taken in connection with other facts." Knoxville Traction Co. v. Brown, 115 Tenn., 323, 331, 89 S. W., 319, 321; National Life & Accident Insurance Co. v. American Trust Co., 17 Tenn. App., 516, 553, 68 S. W. (2d), 971.

It results that the judgment of the circuit court is reversed, the verdict of the jury is set aside, and the plaintiff's suit is dismissed.

The costs of the cause, including the costs of the appeal, will be adjudged against the plaintiff (defendant in error here), Mrs. H. E. Campbell.

Crownover, and DeWitt, JJ., concur.