# RULE v. BROTHERHOOD'S RELIEF & COMPENSATION FUND.—251 S. W. (2d) 309.

Eastern Section.   January 14, 1952.

Petition for Certiorari denied by Supreme Court, June 7, 1952.

Chas. C. Guinn, of Etowah, for appellant.

Duggan & Washington, of Athens, for appellee.

HOWARD, J. Complainant, Roy C. Rule, filed this suit against the Brotherhood's Relief and Compensation Fund, Inc., to recover a total of $1,100 under the terms

of a written contract in the nature of a certificate of membership in said Brotherhood. The certificate provides that a member in good standing is, under certain conditions, entitled to $5 per day for each day or days "held out of service", by his employer, the L & N Railroad Company. The bill avers that complainant was employed by said railroad as a fireman and that he was held out of service for a period from June 7, 1947 to April 9, 1949; that this was done when his employer ordered him out of service for failing to pass an alleged examination for promotion pursuant to his contract of employment which includes the Washington Mediation Agreement of February 20, 1941, when he had been expressly excused from taking said examination by his immediate superior, G. H. Barry. The bill further avers that complainant notified the defendant immediately after he was laid off and every week thereafter, and that the defendant's local agent, T. H. DeLaney, assured him that ample proof in support of his claim had been filed, and that the claim would be paid.

The defendant denied that complainant was entitled to recover anything under his membership certificate, and relied upon several provisions contained therein and in the Constitution as a defense to the suit. These provisions will hereinafter be considered.

Complainant lives at Etowah, Tennessee, and for several years prior to 1947 worked for the L & N Railroad. He was issued a certificate of membership in the defendant organization on September 1, 1942, and was a member in good standing at the time this suit was filed.

Defendant's home office is located at Harrisburg, Pennsylvania, and the membership dues of $2 per month are collected by a local agent, known as the Terminal President, who in the instant case was T. H. DeLaney. The purpose of the organization "is the maintenance of a

society for beneficial and protective purposes to its members from funds collected therein, who under the provisions and stipulations hereinafter provided and set forth, shall be and are eligible for and entitled to benefits for 'held out of service,' or 'retirement,' as hereinafter defined.'' Membership in the organization is limited exclusively to employees in good health of the Motive Power and Transportation Departments of railroads engaged solely in hazardous occupations. The contract further provides:

"Art. XII—Condition of Payment of Benefits— (Sec. 1.)—No member of the Organization shall be eligible for or entitled to any benefits for 'held out of service', or 'retirement', as hereinafter defined, who has not been a member the requisite number of months, and who was not in good and regular standing and eligible for benefits during the period when the cause of said 'held out of service' or 'retirement' occurred as hereinbefore provided.

\* \* \* \* \* \*

" (Sec. 4)—Members of the Organization shall not be eligible for, nor entitled to receive, any benefits or compensation whatsoever for 'held out of service,' as hereinafter defined, where such claim is based in whole or part upon the refusal to perform any duty or service for the employer, or sleeping, \* \* \* the failure to pass any examination or test required by the employer, the failure or neglect of the employer to fix or arrange a time for, or give, any examination or test prerequisite to duty or service, the use of intoxicating liquors, or beverages or drugs or narcotics, and shall not in any case whatsoever pay any sick or death benefits to any of its members.

"Art. XIII—Benefits for 'Held Out of Service'—(Sec. 1)—Any member of this Organization holding a Regular Membership or Extra Membership, who is in good and regular standing, and having a continuous current beneficial membership coming within any group of the classification herein provided, shall be eligible for benefits for 'held out of service,' as hereinafter defined, * * *.

'Held Out of Service' as used in this Constitution, shall include all cases where an employe of the Motive Power or Transportation Department has been entirely and permanently, or temporarily, relieved by his employer from the performance of his said usual duties as discipline for offense or offenses, not, however, because of any wilful or intentional violation or infraction of any order or orders, rule or rules, regulation or regulations, expressed or implied, of his employer, or of any violation, or infraction of any Federal or State law, now in force or hereafter enacted.''

The original notice from complainant's employer, taking him out of service, was received on June 2, 1947, and reads as follows:

"On account of failure to pass examination given at Etowah on April 28, 1947, satisfactorily and in accordance with the Washington Mediation Agreement of February 22, 1941, you are being taken out of the service.

"Please arrange to turn in all company property in your possession to General Foreman, Rose, at Etowah."

It definitely appears that the complainant was excused from taking the foregoing examination by his superior, G. H. Barry, for on July 24, 1947, Barry gave complainant

a certificate to this effect. It is undisputed that the complainant, under the terms of the Washington Mediation Agreement, was entitled to three opportunities to pass an examination for promotion before his employer could rightfully terminate his services.

On November 6, 1947, the complainant filed application with the defendant's local agent, T. H. DeLaney, for "held out of service" benefits, and in support of his claim gave the following reasons for his being out of service:

"Letters inclosed explains the full cause of my dismissal from service, which the proof is that the Company did not carry out their part of the agreement according to promotion rules as I passed satisfactory mechanical examination to become a locomotive Engr., but failed on special rules examination by train Master. (one trial only) * * *. Case still in question & arguments are still going on, they say there is still a chance of getting back to work as fireman."

On November 17, 1947, the defendant notified complainant that his claim had been denied, giving as reasons therefor that his claim did not come within the provisions of the Constitution, "particularly Article XII, Sec. 4,— failure to pass any examination or test required by the employer, and Article XXXV, Sec. 1-a, not as discipline for offense or offenses." The complainant was told that he could seek redress by complying with the Constitution in matters of appeal.

On April 29, 1948, the complainant's employer notified him that he was being reinstated and that he was to be given one more opportunity to pass the transportation rules examination in order to qualify for service as an engineer. He was told to prepare himself for the examination, but the record does not disclose the results.

Later, on May 9, 1949, the complainant, through his attorney, prepared and filed his notice of appeal, which was later denied, and thereafter complainant filed this suit.

Upon the hearing the Chancellor declared that complainant was not entitled to recover and dismissed his bill. The complainant has perfected an appeal to this Court, and has assigned errors, the chief complaint being that the Chancellor misconstrued the provisions of the contract. The Chancellor filed a written finding, a part of which reads as follows:

"Construing the contract as a whole, and particularly the provisions herein recited, the Court is of opinion that benefits arising thereunder must be predicated upon the employee having been 'held out of service', by employer for a disciplinary measure for infraction of company rules, or some other offense committed within the limitations defined in Article XXXV, Sec. 1-a * * * occurring within the contemplation of said provisions of the contract. In this case the complainant was held out of service by error or fault of the employer. Thus the Court is of opinion that no benefits accrued to complainant under his Certificate of Membership in the Brotherhood, as evidenced by his contract."

It is urged on behalf of the complainant (1) that "the contract embraces 'held out of service' when it is the fault of the employer, but does not insure against 'held out of service' when it is the fault of the employee," and (2) that the contract "constituted a form of insurance policy against loss of time." After carefully reading the Constitution, which is a part of the contract, we are unable to agree with this insistence.

In Article XII of the Constitution, Section 4, it sets out matters for which no claim will lie, and in Article XIII,

it is stated under the head of "Benefits for held out of service", Section 1, that claims will lie for "held out of service, as hereinafter defined." In Article XXXV, the term "held out of service" is defined and it is stated that it shall include all cases where an employee " * * * has been entirely and permanently, or temporarily, relieved by his employer from the performance of his said usual duties as discipline for offense or offenses, not, however, because of any wilful or intentional violation or infraction of any order or orders, rule or rules, regulation or regulations, expressed or implied, of his employer or of any violation, or infraction of any Federal or State Law, now in force or hereinafter enacted."

It is obvious that the contract does not cover loss of time generally, but is limited to the employee being held out of service for discipline for offense or offenses, etc. The proof shows that the Company laid complainant off because he had failed to pass an examination, although the company's action seems to have been erroneous and unjustified. However, it was not a discipline for offenses, and it settles down to being an unjust and improper action on the part of his Company. Accordingly, it does not seem to us that this type of lay-off is covered by the contract.

Furthermore, it seems that complainant should have exhausted his remedies under the provisions of his contract which provides for appeals where claims are denied. Article XXXII of the Constitution provides as follows:

" (Sec. 1.)—Any member of this Organization, feeling himself aggrieved by the decision of the tribunal or tribunals authorized by the Constitution to hear and determine his case, whether it be a claim for benefits, or expulsion from membership or any cause

whatsoever, or in any other matter pertaining to his membership in or benefits from the Organization, or as to the construction of the language or meaning of the provision of this Constitution, or as to any complaints, objections or charges against any officers of the Organization, or management, policy or administration of the affairs of the Organization, shall pursue the procedure and exhaust the remedies of hearing and appeal as herein provided.

"(Sec. 2.)—The decision of the International President, or other official hereby vested with like authority, upon any such matter as aforesaid shall be final, binding and conclusive, unless appealed to the Board of Directors, by filing with the International President a written notice of such appeal, within fifteen (15) days after receipt of notice by mail of the decision therein.

"(Sec. 3.)—Whenever an appeal is taken, in any manner as aforesaid, to the Board of Directors, it shall be heard by the said Board of Directors, without any further notice whatsoever, at the next stated meeting thereof, or at such subsequent meeting or time as it may designate.

"The appellant shall present to the said Board of Directors his case in writing and under oath, with the privilege of appearing in person, if desirable or convenient, substantiating all evidence relative and cognate thereto by properly executed affidavits or by witnesses in person, together with all the findings and reports theretofore made in the matter by any official or body of the Organization, authorized to investigate or hear the same.

"The decision of the Board of Directors by a majority vote of the members thereof upon any such

matter shall be final, binding and conclusive unless a notice of intention to institute legal proceedings for the adjudication of the said matter be given to the Organization through the International President at the principal office of the Organization by registered mail within one hundred (100) days after receipt of notice by mail of the decision of the Board of Directors, and the actual institution of record of such legal proceedings within one hundred fifty (150) days after receipt of notice by mail of the said decision of the Board of Directors; and failing or neglecting to give such notice or institute such legal proceedings within the respective time limits herein prescribed, the decision of the Board of Directors on appeal shall be final, binding and conclusive without any statute of limitations or other law whatsoever to the contrary notwithstanding.''

█ It is a settled rule in this state that where tribunals are provided by the constitution and by-laws of a beneficial association, which unequivocally require that members first exhaust their remedies within the association before litigating their rights in courts, as does Article XXXII, Sections 1, 2 and 3, of the foregoing constitution, such remedies within the association must be exhausted before the courts can be resorted to. Honea v. American Council, J.O.U.A.M., 139 Tenn. 21, 201 S. W. 127; Barthell v. Zachman, 162 Tenn. 336, 36 S. W. (2d) 886; International Harvester Co. v. Campbell, 18 Tenn. App. 320, 76 S. W. (2d) 986; 10 C. J. S., Beneficial Associations, Sec. 68, p. 317, 38 Am. Jur. 54, p. 483.

In the instant case complainant had the right to appeal in the manner provided from the decision of the defendant denying his claim. There is no evidence tending to show that he was in any wise by acts, conduct or representa-

tions of any authorized representative of the defendant, prevented from pursuing the remedies prescribed by Article XXXII of the constitution. In fact it appears from the letter dated November 17, 1947, written by George W. Nolan, International President of the Brotherhood, notifying complainant that his claim had been denied, that he (complainant) could seek "redress from this decision by complying with the Constitution in matters of appeal."

While there is evidence to show that T. H. De-Laney was defendant's agent in collecting dues, sending in claims, etc., he apparently had no authority, so far as the record shows, to pass upon the validity of claims. He expressly denied that he had ever assumed such authority, and assuming that he did it would be in opposition to the provisions of the Constitution, which are made a part of the contract. The Constitution sets out the procedure on claims, and so far as it shows, no local official had any authority whatsoever with respect to determining the validity of claims. It is provided in Article XXVIII, Sec. 3, of the Constitution, that "The International President and International Secretary-Treasurer may select a member of the respective district or separate region, who shall be designated a 'Terminal President,' to perform only such service as may be assigned to him from time to time by such official, but without any authority whatsoever to represent, bind, or obligate this Organization." And Article XXXVI provides that "No officer or official of this Organization, appointed or elected, shall have the power or authority in any respect whatsoever to waive or abridge any of the terms or provisions of the Constitution, or any right, privilege or immunity belonging to this Organization, but such right, privilege, power and authority is hereby specifically reserved unto the Organization, ex-

cept as herein provided." Where a third person actually knows, or should know, the limitations of an agent's authority, the principal is not bound by an act that is beyond such limitations. Umstattd v. Metropolitan Life Ins. Co., 21 Tenn. App. 312, 110 S. W. (2d) 342; Arnold v. Locomotive Engineers Mut. Life & Acc. Ins. Ass'n, 30 Tenn. App. 166, 204 S. W. (2d) 191.

It results that all assignments of error will be overruled, and the decree will be affirmed at complainant's costs.

McAmis and Hale, JJ., concur.