IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

March 1, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| CANONIE ENERGY, INC., and | ) | ANDERSON COUNTY |
| WGI, INC. | ) | 03A01-9506-CH-00200 |
| | ) | |
| Plaintiffs-Appellees | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. WILLIAM E. LANTRIP, |
| | ) | CHANCELLOR |
| | ) | |
| RODNEY KING, MARK HOLBROOK, | ) | |
| AMERICAN RESOURCES MANAGEMENT, | ) | |
| INC., AMERICAN GAS | ) | |
| TECHNOLOGIES, INC., | ) | |
| AMERICAN ENERGY EXPLORATION, | ) | |
| INC., BERROD, INC., RICK | ) | |
| CASTOR, and McCROME, LTD., INC. | ) | AFFIRMED IN PART; VACATED |
| | ) | IN PART; MODIFIED IN PART; |
| Defendants-Appellants | ) | and REMANDED |

WILLIAM P. SNYDER and ADRIENNE L. ANDERSON OF KNOXVILLE FOR
APPELLANTS MARK HOLBROOK, McCROME, LTD., INC., AMERICAN RESOURCE
MANAGEMENT, INC., AMERICAN ENERGY EXPLORATION, INC., and AMERICAN
GAS TECHNOLOGIES, INC.

H. BRUCE GUYTON OF KNOXVILLE FOR APPELLEES

O P I N I O N

Goddard, P.J.

The Defendants appeal a summary judgment entered in favor of the Plaintiffs for the enforcement of a settlement agreement.

The facts of this case are somewhat complex. Canonie Energy, Inc. (CEI) and WGI, Inc. (WGI), which shall be collectively referred to as Plaintiffs, entered into a venture with American Resource Management, Inc. (ARM), American Energy Exploration, Inc., (AEX) and Coal Creek Manufacturing Company (Coal Creek). The venture, called "the Blue Gem Project," was for the exploration of oil and natural gas in Anderson and Morgan counties. The venture also included the drilling and construction of oil and natural gas wells and the sale of oil and natural gas produced by those wells.

Under the agreement, the Plaintiffs were to contribute nine million dollars over a seven-year period. ARM and AEX agreed to contribute interests in certain existing oil and natural gas wells and interests in mineral rights leases, and Coal Creek agreed to contribute an option to drill oil and natural gas wells on approximately seventy thousand acres of land. The agreement provided that ARM was to act as the operating manager of the project and was to provide all operation services. In connection with such duties, ARM hired AGT to perform the actual construction and operation of the project's wells.

In November of 1993, the Plaintiffs filed suit alleging that they were fraudulently induced to participate in the Blue Gem Project and alleging that AGT, as the alter ego of ARM, wrongfully charged a markup on materials supplied for the project and wrongfully charged for the equipment and services pursuant to the price list in the exploration agreement. Named as defendants in the suit were ARM, AGT, AEX, Coal Creek, Mark Holbrook, Rodney King, Berrod, Inc., and Richard Castor. Holbrook was the president of ARM and AEX. King was a former president of AGT and the current president of Berrod, Inc., the sole shareholder of AEX. Castor was the president of AGT.

In May 1994, Castor and Holbrook became interested in the possibility of settling this lawsuit. Castor contacted the Plaintiffs' representatives to discuss this possibility. The Plaintiffs and Holbrook agreed that the discussions would take place in Plaintiffs' offices in South Haven, Michigan. Present at the meeting were: Holbrook, Castor, Tony Canonie, Sr., an investor in the Blue Gem Project, Jerry Canonie, president of CEI, Tony Canonie, Jr., chairman of the board of directors of CEI, and Claude Woods, president of WGI. King did not attend the meeting, nor was he made aware that it was taking place.

Holbrook alleges that during the settlement discussions, the Plaintiffs made reference to the possibility that criminal charges might be brought against Holbrook and his family, who were shareholders and directors of McCrome, Inc.,

3

Holbrook's family corporation. McCrome was not an original party to the lawsuit, but it did own an interest in the Blue Gem Project as of May 1994, and the Plaintiffs later amended their complaint to add a claim against McCrome. Holbrook further alleges that there was also discussion that similar charges could be brought against King and his family members. There were also allegations that King had engaged in extramarital affairs and that these affairs would be exposed if the litigation continued. Holbrook further alleges that the Plaintiffs threatened to force both the King and Holbrook families into bankruptcy.

The settlement meeting was held in the offices of CEI and at the end of day one, a draft of the agreement was reached. That night, the Plaintiffs, Holbrook and Castor socialized together. Holbrook and Castor returned to their hotel room later that evening. Holbrook called his wife, but he did not discuss the settlement negotiations with her. Neither Holbrook nor Castor contacted their attorneys.

The next day negotiations resumed. Holbrook requested that some changes be made in the draft settlement agreement and the changes were made. Holbrook asserts that the Plaintiffs then agreed that Holbrook and Castor's settlement offer was sufficient to cover King as well and that the Plaintiffs would release King and Berrod, Inc., King's family corporation, from all claims if King would agree to be bound by the terms of the settlement agreement. However, the settlement agreement itself provides

4

that the Plaintiffs would dismiss the suit only as to ARM, AGT, Holbrook, AEX, Castor and McCrome. It further stated that the settlement agreement did not affect claims against Berrod, Inc., and King.

Prior to the signing of the settlement agreement, Castor told the Plaintiffs that in April of that year he submitted a letter of resignation as president of AGT and that, as a result, he may not have the necessary authority to execute the settlement agreement on behalf of AGT. However, there appears to be some question over whether Castor's letter of resignation was accepted by AGT. Castor said he was told that the resignation would not be accepted until someone could be found to take his place. Thus, at the time of the settlement, Castor thought his resignation had not been accepted and that he still had authority to act as president of AGT. The agreement was then signed by the parties. Holbrook signed the agreement on behalf of himself, ARM, AEX, and McCrome. Castor signed the agreement of behalf of himself and AGT.

Upon returning from the settlement negotiations in Michigan, Holbrook met with King and King initially agreed to the terms of the settlement agreement. Holbrook then met with his family, the shareholders and directors of McCrome, and advised them of the settlement meeting and the agreement it produced. The family members then voted to accept the terms of the settlement agreement.

5

Shortly thereafter, Holbrook alleges that Jerry Canonie advised him that CEI and WGI would not agree to release King or Berrod, Inc., of all claims unless King transferred certain assets to CEI. At about this same time, the shareholders and directors of Berrod, Inc., met to discuss the settlement agreement. Berrod, Inc., was not a party to the settlement agreement, but it owned all of AEX's shares of stock and one-third of ARM's shares of stock. The shareholders and directors voted not to ratify Holbrook's execution of the agreement. Norman Beauchamp, a Michigan attorney and owner of one-third of ARM's shares of stock, also refused to vote his shares of stock to ratify Holbrook's execution of the agreement. The shareholders and directors of AGT also met, and they voted not to ratify Castor's execution of the agreement.

In the meantime, the Plaintiffs filed a motion to stay proceedings in the Trial Court based upon the reached settlement agreement. The Plaintiffs' motion requested that a stay be granted as to all Defendants except King, Berrod, Inc., and Coal Creek. ARM, AEX, and Holbrook then opposed the motion on the grounds that the settlement agreement was unenforceable. The Plaintiffs subsequently amended their complaint to add an alternative claim for the enforcement of the settlement agreement. The Plaintiffs also added a claim against McCrome for the alleged wrongful receipt of assets from ARM and an alternative claim for enforcement of the settlement agreement.

6

The Plaintiffs subsequently took a voluntary non-suit as to their fraudulent inducement claims. The Plaintiffs also voluntarily dismissed Defendant Coal Creek. Then in December of 1994, all Defendants filed a motion for partial summary judgment. The Plaintiffs also filed a motion for partial summary judgment seeking to enforce the settlement agreement against ARM, AEX, Holbrook, McCrome, AGT and Castor.

On March 10, 1995, the Trial Court entered an order denying the Defendants' motion and granting the Plaintiffs' motion for summary judgment as to Holbrook and McCrome, holding the settlement agreement valid and enforceable as to those parties. In its order, the Trial Court specifically found that there was no disputed material fact as to the issue of duress and that there were no improper pressures or influences on Holbrook at the time he signed the settlement agreement. A second order was entered on March 24, 1995, granting the Plaintiffs' motion for summary judgment for enforcement of the settlement agreement against ARM, AEX, AGT and Castor.[1] In doing so, the Trial Court found that Holbrook and Castor had either actual or apparent authority to bind the corporations to the settlement agreement and that there were no disputed facts to show that ARM, AEX, or AGT took any action which would adversely affect or invalidate the settlement agreement or would challenge or dispute the

---

[1] At or around this same time, the Plaintiffs apparently took a voluntary non-suit of their claims against Rodney King and Berrod, Inc. The record on appeal does not appear to include the order of dismissal. However, the Court recognized the dismissal in an order taxing court costs dated March 24, 1995, and thus, we treat the Court's award of summary judgment as a final judgment that is appealable to this Court.

7

authority of Holbrook or Castor. Holbrook, McCrome, ARM, AEX, and AGT appealed. The appeals of these Defendants have been consolidated. Defendant Castor did not appeal.

The Defendants assert that the Trial Court erred in granting the Plaintiffs' motion for summary judgment because there are disputed issues of material fact as to the issues of duress, authority, failure of consideration and lack of consideration.

The Supreme Court of Tennessee, in Byrd v. Hall, 847 S.W.2d 208 (Tenn.1993), set forth the proper summary judgment analysis to be applied in Tennessee. There, the Court said in evaluating a summary judgment motion, these questions must be resolved: "(1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial."

Byrd also makes the follow holdings: summary judgment should be employed where there is no dispute over the evidence and there is no issue for a jury to decide. Rather, it is just for the court to apply the law. For a party to avoid summary judgment, it must show that the fact in dispute is material; meaning, this fact is one that "must be decided in order to resolve the substantive claim or defense at which the motion is directed." If such a disputed, material fact does exist, the court "must then determine whether the disputed material fact

8

creates a genuine issue within the meaning of Rule 56.03." Here, "the test for a 'genuine issue' is whether a reasonable jury could legitimately resolve that fact in favor of one side or the other. If the answer is yes, summary judgment is inappropriate; if the answer is no, summary judgment is proper because a trial would be pointless. . . ." When applying this test, "the court is to view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor." It is the burden of the nonmoving party to demonstrate that there are no disputed, material facts creating a genuine issue for trial and that summary judgment is appropriate.

In reviewing the order for summary judgment, we choose to address the issue of authority first. Here, the Plaintiffs have the burden of proving that an agency relationship existed between Holbrook and ARM and AEX and between Castor and AEX. Sloan v. Hall, 673 S.W.2d 548 (Tenn. App. 1984). Sloan also holds the following: "The scope and extent of an agent's real and apparent authority are questions to be determined by the trier of fact from all the facts and circumstances in evidence." Furthermore, an agent's authority must be traceable to the principal and cannot be shown by the agent's statements or actions alone. And when a third person "actually knows, or should know, the limitations of an agent's authority, the principal is not bound by an act that is beyond such limitations." Rule v. Brotherhood's Relief & Compensation Fund, 36 Tenn. App. 20, 251 S.W.2d 309 (1952).

9

Looking first to Castor's authority, a dispute exists as to the effect of his resignation from the position of president of AGT. Castor maintains that despite his resignation he continued to function as president of AGT and thought he had authority to sign the settlement agreement. However, under the rule of Sloan, Castor's statements alone cannot be determinative of his authority. King, the former president of AGT who received Castor's letter of resignation, maintains that the resignation was accepted at the time it was tendered and that as such, Castor had no authority to enter into the settlement agreement on behalf of AGT. Thus, Castor's resignation creates a disputed issue as to whether he had any actual authority at the time he signed the settlement agreement. Whether the Plaintiffs thought Castor had authority is also disputed. Reviewing the evidence in the light most favorable to the Defendants, it appears that Castor informed the Plaintiffs of his resignation and the possibility that he lacked the requisite authority to enter into the agreement. Thus, since the Plaintiffs were made aware that Castor's authority to bind AGT was in question, the Plaintiffs cannot now argue that they assumed Castor had apparent authority to act for AGT. The Plaintiffs were warned of the possibility that Castor had no authority since he had tendered a letter of resignation. Therefore, it appears to this Court that a genuine issue of material fact exists: Whether Castor did in fact have the authority to enter into the settlement agreement on behalf of AGT. Because this is an issue of fact that must be resolved, summary judgment is vacated as to Defendant AGT. The Defendant

10

Castor did not appeal from the Trial Court's order enforcing the settlement agreement.

We now turn to the issue of Holbrook's authority to bind ARM and AEX. At the time he signed the agreement, Holbrook was the president of these two corporations. As such, Holbrook has the authority to enter into agreements on behalf of the corporations. "All corporate organizations act by and through boards, commissions, officers and employees, and if they act within the apparent scope of their authority, then their actions are those of the corporation and, therefore, binding on the stockholders or members of such corporations." Whitehaven Util. Dist. of Shelby County v. Ramsay, 215 Tenn. 435, 387 S.W.2d 351 (1964). Here, the Court held that the actions of the board's commissioners were unquestionably binding on the members, residents and bondholders of the utility district. Similarly, in Blasingame v. American Materials, Inc., 654 S.W.2d 659 (Tenn.1983), the Supreme Court held that the president of a corporation could bind the corporation to a contract without the approval of the Board of Directors. It is clear then that Holbrook, as president of AEX and ARM, had authority to bind the corporations so long as he did not exceed the scope of that authority. It is not clear as to what the scope of his authority may have been. Without this determination, it is impossible to know whether Holbrook exceeded his authority. Making this determination is for the trier of fact. See Sloan, supra. Additionally, the board of directors of both AEX and ARM voted

11

not to ratify Holbrook's signing of the settlement agreement. Contrary to the Trial Court's finding, these votes appear to be actions that may adversely affect or invalidate the settlement agreement. At the least, these votes certainly appear to challenge or dispute the authority of Holbrook. Since a determination was not made as to whether Holbrook exceeded his authority when he signed the settlement agreement without the knowledge of the shareholders, summary judgment is vacated as to Defendants AEX and ARM.

Having discovered one reason why summary judgment should not have been granted as to Defendants AGT, AEX, and ARM, we go no further as to these Defendants. Since it is not necessary to reach the other issues raised by these Defendants, we choose not to do so.

However, there now remains the question of Holbrook and McCrome, Holbrook's family corporation. There is no issue of authority here because the shareholders of McCrome, Holbrook's family, did not question Holbrook's authority. In fact, they voted to ratify the settlement agreement. Defendant Holbrook argues instead that the settlement agreement should not be enforced because the agreement was executed under duress and because no consideration was given to McCrome in exchange for agreeing to the settlement.

12

We discuss the duress issue first. Tennessee has generally defined duress as the condition of mind produced by the improper external pressure or influence that practically destroys the free agency of a party, and causes him to do and act or make a contract not of his own volition, but under such wrongful external pressure. Rainey v. Rainey, 795 S.W.2d 139 (Tenn. App. 1990). See also Gilley v. Gilley, 778 S.W.2d 862 (Tenn. App. 1989) (internal pressures that are of a party's own making are not duress). To determine whether there is duress, the question in each case is, was the person signing the contract so affected by threats of the other party as to be bereft of the quality of mind essential to the making of a contract. In other words, was the person bereft of the free exercise of his will power. Exum v. Washington Fire and Marine Ins. Co., 41 Tenn. App. 610, 297 S.W.2d 805 (1955). Whether duress exists is determined by examining all the circumstances. Simpson v. Harper, 21 Tenn. App. 431, 111 S.W.2d 882 (1937).

In this case, the Trial Court determined that there were no disputed material facts with respect to the issue of duress and further that Holbrook was not under improper external forces when he signed the agreement. We agree. The Plaintiffs do not dispute the fact that some sort of threats as to the possibility of criminal prosecution and bankruptcy were communicated to Holbrook. However, these threats do not constitute such improper threats as to invalidate Holbrook's signing of the agreement. Holbrook was not forced into the

13

settlement process; it was he who initiated settlement by contacting the Plaintiffs and then agreeing to meet in their offices in Michigan. Holbrook stated in his deposition that he was not forced to sign the agreement and that he was free to leave the settlement discussions at any time. He could have also contacted his lawyer or his family at any time. He chose not to do so. Holbrook was not deprived of the free exercise of his will power. We agree with the Trial Court that any pressures Holbrook may have been under at the time of the agreement were not such improper ones as to constitute duress and to invalidate the agreement.

As for the consideration issue, in order for a settlement agreement to be enforceable, like any contract, consideration must be given and received. Milwee v. Peachtree Cypress Investment Co., 510 F. Supp. 279 (E.D. Tenn. 1977). It is well settled in Tennessee that the court will not "inquire into the adequacy or inadequacy of the consideration for a compromise fairly and deliberately made." Thurmond v. Whittaker, 1 Tenn. App. 111 (1925). Releasing claims against a party, whether the claims are actually pending or not, is sufficient consideration for a settlement agreement. Service Stamp Co. v. Ketchen, 10 Tenn. App. 59 (1929). Furthermore, where the facts are undisputed, whether a release constitutes adequate consideration is a question of law. Applewhite v. Allen, 27 Tenn. (1 Hum.) 696 (1848).

14

In the case at the bar, Defendant Holbrook agreed on behalf of McCrome to give up some assets of the company[2] in order to be released from any claims the Plaintiffs might have against McCrome. That no claims had been actually filed against McCrome at the time of settlement is not dispositive.[3] It appears then that the Plaintiffs and McCrome gave sufficient consideration for the settlement agreement, and there is no need for discussion as to the validity of any claims allegedly held by the Plaintiffs or the adequacy of the Plaintiffs' consideration in exchange for McCrome's assets.

Thus, finding no disputed material facts as to the issues of duress or consideration, we affirm the Trial Court's entry of summary judgment as to McCrome and Holbrook.

In addition to their appeal of summary judgment, the Defendants later appealed the Trial Court's order awarding discretionary costs to the Plaintiffs. They insist the Court abused its discretion by including costs incurred incident to the original suit for breach of contract. While this is true, we have no doubt that the information developed in preparing the

---

[2] Specifically, Holbrook and McCrome agreed to give the Plaintiffs a 4.45% working interest in the Blue Gem Project as well as 93 shares of Tennessee Energy Pipeline (TEPSCO) or the money received from a sale of those shares. In return, the Plaintiffs agreed to release Holbrook and McCrome from any claim arising out of the lawsuit, from all monetary obligations and claims allegedly owed the Plaintiffs and any other claim arising out of the Blue Gem Project.

[3] The Trial Court granted the Plaintiffs' motion to amend their complaint on October 31, 1994, and the Plaintiffs subsequently added a claim against McCrome for the alleged wrongful receipt of assets from ARM and in the alternative, a claim for the enforcement of the settlement agreement.

15

original claim prompted the settlement agreement which is the principal subject of this appeal. In light of this, we find no abuse of discretion in allowing such fees.

We accordingly affirm the judgment insofar as the Defendants Holbrook and McCrome are concerned, but modify the discretionary costs award by requiring them to pay one-fifth each of the amount awarded by the Chancellor, vacate the judgment as to the remaining Defendants, and remand the case for further proceedings not inconsistent with this opinion. One-half of the costs of appeal are adjudged against Holbrook and McCrome and one-half against Canonie Energy and WGI.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Charles D. Susano, Jr., J.

17